*648
 
 OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiff-appellant Stahlbrodt, during the pertinent tax assessment period, published and distributed free of charge in Monroe County “The Shopping Bag,” a weekly advertising paper which he claimed qualified for a sales tax exemption on purchases of printing services as a “shopping paper” under Tax Law § 1115 (i). After auditing The Shopping Bag, the State Department of Taxation and Finance disagreed, and assessed sales taxes on the printing services that plaintiff had purchased in publishing the paper. On plaintiff’s administrative challenge, the Tax Appeals Tribunal upheld the assessment, concluding that plaintiff failed to qualify for the exemption because The Shopping Bag did not meet the requirement of Tax Law § 1115 (i) (C) that its advertising copy not exceed 90 percent of the printed area of each issue.
 

 Plaintiff, along with his successor-in-interest, The Greater Rochester Advertiser, Inc., then brought this declaratory judgment action challenging the facial validity of Tax Law § 1115 (i) (C) (also known as “the 90 percent rule”) under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the US Constitution. The complaint alleged that the 90 percent rule constitutes content-based discrimination against certain forms of expression, singles out a small subset of newspapers for differential tax treatment, and denies a class of shopping papers equal protection of the laws.
 

 Supreme Court, in a comprehensive opinion by Justice Thomas W. Keegan, rejected each of plaintiffs’ claims and dismissed the complaint. The Appellate Division affirmed (246 AD2d 793). Plaintiff Stahlbrodt appeals as of right on constitutional grounds (see, CPLR 5601 [b] [1]), and we now modify, declaring Tax Law § 1115 (i) (C) to be constitutional and, as so modified, affirm.
 

 On this appeal, plaintiff has restricted his attack on the constitutionality of Tax Law § 1115 (i) (C) to one ground: that, in making entitlement to the shopping paper sales tax exemption turn on whether advertising comprises not more than 90 percent of the printed area, the provision discriminates among shopping papers based on their content and thus violates the First Amendment. We disagree.
 

 
 *649
 
 We begin with the unarguable fact that the imposition of the sales tax here is not directed at the press in general or at a particular class of news entities, but is one of general application for the taxation of sales of goods and services in the State
 
 (Matter of Henry v Wetzler,
 
 82 NY2d 859, 861,
 
 cert denied
 
 511 US 1126). In
 
 Matter of Henry v Wetzler,
 
 we rejected a constitutional challenge by shopping papers to being treated differently from newspapers and other news publications that receive a sales tax exemption for purchases of goods and services used “predominantly in the production of tangible personal property * * * for sale” (Tax Law § 1115 [a] [12]; [c]). We held that, because shopping papers are distributed without charge, they were treated no differently in being denied the exemption than
 
 “any
 
 business that does not produce a product ‘for sale’”
 
 (id.,
 
 at 861 [emphasis in the original]). Thus, to avoid sales tax on their purchases of printing services, shopping papers such as plaintiffs are entirely dependent upon the special exemption set up for them in Tax Law § 1115 (i).
 

 The 90 percent rule was incorporated into the shopping paper sales tax exemption to ensure that at least 10 percent of the publication would be devoted to news of general or community interest, or community notices, thus restricting the exemption to those advertising papers that serve at least in part the same informational social purposes served by general newspapers and news periodicals
 
 (see,
 
 Governor’s Mem approving L 1977, ch 884, 1977 NY Legis Ann, at 305, 306).
 

 The controlling Supreme Court precedents in this case are
 
 Regan v Taxation with Representation of Wash.
 
 (461 US 540) and
 
 Leathers v Medlock
 
 (499 US 439). Just as in the instant case,
 
 Regan
 
 and
 
 Leathers
 
 both involved challenges to differential entitlement to a specific tax benefit with respect to a tax of general application, to the advantage of some forms of expression or speakers, but not others. In
 
 Regan,
 
 the challenge was to a statutory scheme exempting all nonprofit civic welfare organizations from Federal taxation on income, but according the additional financial benefit of having contributions to them tax deductible to the donor only to those civic welfare organizations
 
 not
 
 engaged in substantial lobbying for legislation
 
 (see, Regan v Taxation with Representation of Wash.,
 
 461 US, at 543). The Supreme Court characterized both tax exemptions (such as claimed by plaintiff here) and tax deductibility as “a form of [legislative] subsidy that is administered through the tax system. A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would
 
 *650
 
 have to pay on its income”
 
 (id.,
 
 at 544). The
 
 Regan
 
 Court distinguished between a presumptively valid legislative decision to subsidize certain forms of expression and not others, and an impermissible direct penalization or regulation of speech
 
 (see, id.,
 
 at 545). The former is invalid only “if Congress were to discriminate
 
 invidiously
 
 in its subsidies in such a way as to aim at the suppression of dangerous ideas”
 
 (id.,
 
 at 548 [internal quotation marks and brackets omitted] [emphasis supplied]).
 

 In
 
 Leathers v Medlock (supra)
 
 the Court upheld an exemption from a general State gross receipts tax that was granted to newspapers, subscription magazines and scrambled satellite TV broadcasters, but not to cable television companies. The Court held that a differential tax exemption scheme involving forms of expression or different speakers only becomes “constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints”
 
 (Leathers v Medlock,
 
 499 US, at 447). The threat to particular ideas or viewpoints may be embodied in taxes singling out the press for a special burden, targeting a small group of speakers, or discriminating on the basis of the content of the ideas expressed by the taxpayer
 
 (id.,
 
 at 447).
 

 The 90 percent rule of the shopping paper sales tax exemption passes constitutional muster under
 
 Regan
 
 and
 
 Leathers.
 
 As in those cases, the tax imposed on plaintiff here is one of general application, levied against virtually all final sales of products and services
 
 (see, Matter of Henry v Wetzler, supra).
 
 Neither the print media in general, nor shopping papers in particular, are singled out for special treatment. Other forms of published commercial speech which are distributed free of charge, including shopping catalogs, advertising flyers and shopping center advertising sheets, do not enjoy any sales tax exemption for purchases of printing services (Tax Law § 1115 [i] [D]). Plaintiff can readily qualify for the exemption by the simple expedient of a modest reduction in advertising space in its paper, possibly entailing an equally modest diminution in advertising revenues.
 

 Moreover, the 90 percent rule does not enforce any differential treatment based on the content of ideas or viewpoints expressed in plaintiffs shopping paper. In this respect
 
 Regan
 
 remains instructive. As discussed,
 
 Regan
 
 teaches that, absent invidious discrimination, the Legislature can pick and choose between the forms of expression it decides to subsidize through a tax exemption. In
 
 Regan,
 
 the Supreme Court held that the
 
 *651
 
 First Amendment was not implicated in Congress’ choice not to subsidize expressions designed to advance a public interest group’s legislative agenda. Here, a fortiori, the Legislature may validly decline to subsidize shopping papers which fail to serve at least minimally the same social purpose as a conventional newspaper by informing the public in matters of community interest, rather than exclusively commercial interest.
 

 The Supreme Court recently reaffirmed the crucial constitutional distinction made in
 
 Regan
 
 between direct, content-based discriminatory regulation or penalization of expression, on the one hand, and subsidization of some expressions to encourage activities deemed socially desirable while remaining neutral as to other expressions. In
 
 National Endowment for Arts v Finley
 
 (524 US 569, —, 118 S Ct 2168, 2179, 141 L Ed 2d 500, 516), the Court held that “although the First Amendment certainly has application in the subsidy context, we note that the Government may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty at stake.”
 

 Finally,
 
 Cincinnati v Discovery Network
 
 (507 US 410) and
 
 Arkansas Writers’ Project v Ragland
 
 (481 US 221), principally relied upon by plaintiff, are distinguishable under the principles of
 
 Regan
 
 and
 
 Leathers.
 
 In
 
 Cincinnati,
 
 the Supreme Court invalidated the revocation of permits of two commercial magazine publications to use newsracks on city sidewalks for free distribution purposes, although some 1,500 to 2,000 newsracks were left available for the distribution of conventional newspapers. The closed newsrack outlets accounted for one third of the total distribution of one magazine and 15 percent of the total distribution of the other. Thus,
 
 Cincinnati
 
 presented the Supreme Court with a classic instance of the imposition of a regulation directly and significantly suppressing commercial expression, triggering First Amendment concerns, rather than merely a governmental decision to subsidize certain forms of expression via a tax exemption, while remaining neutral as to the others, as in the instant case
 
 (cf., National Endowment for Arts v Finley,
 
 supra;
 
 Regan v Taxation with Representation of Wash., supra).
 

 In
 
 Arkansas Writers’ Project,
 
 the challenged tax scheme exempted receipts from the sale of all religious, professional, trade and sports magazines published in the State from the sales tax, while taxing the sales of magazines of general interest. Crucial to the decision was that the burden of the tax fell on a very small group of magazines — at most three publica
 
 *652
 
 tions, including the plaintiffs. Thus, as the Court noted, “the fundamental question is * * * whether [the tax] targets a small group within the press”
 
 (Arkansas Writers’ Project v Ragland, supra,
 
 481 US, at 229). This constitutional infirmity was also identified in
 
 Leathers v Medlock (supra),
 
 but is totally absent in the instant case where numerous publications must pay sales tax on the purchase of printing services
 
 (see, e.g.,
 
 Tax Law § 1115 [i] [D]). Moreover, the imposition of the tax on the plaintiff in
 
 Arkansas Writers’ Project
 
 could not have been avoided, as here, by a minor adjustment between the relative advertising and news copy in plaintiffs shopping paper. Rather, avoidance of the tax by the plaintiff in that case could only have been achieved by a shift in its entire theme, commentary and reportage on matters of general interest, thereby effectively penalizing the magazine for providing coverage of some entire topics
 
 (Arkansas Writers’ Project v Ragland,
 
 481 US, at 230). Again, the 90 percent rule in this case does not at all operate to regulate the ideas or topics in plaintiffs advertising copy, or any other particular ideas, viewpoints or subjects but instead simply serves as a means of identifying those papers that qualify for a subsidy.
 

 Accordingly, we agree with the lower courts that Tax Law § 1115 (i) (C) is constitutional. However, the proper disposition of this declaratory action, is an adverse declaration to the plaintiffs, rather than a dismissal of the complaint
 
 (see, Lanza v Wagner,
 
 11 NY2d 317, 334,
 
 cert denied
 
 371 US 901). Thus, the order of the Appellate Division should be modified, with costs to defendant, by granting judgment declaring Tax Law § 1115 (i) (C) constitutional and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order modified, etc.