■ In the Matter of 677 NEW LOUDON CORPORATION, Doing Business as NITE MOVES, Petitioner, v STATE OF NEW YORK TAX APPEALS TRIBUNAL et al., Respondents. [925 NYS2d 686]—

Egan Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioner operates Nite Moves, an adult juice bar located in the Town of Colonie, Albany County, where patrons may view exotic dances performed by women in various stages of undress. The club generates revenue from four primary sources: general admission charges, which entitle patrons to enter the club, mingle with the dancers and view on-stage performances, as well as any table or lap dances performed on the open floor; "couch sales," representing the fee charged when a dancer performs for a customer in one of the club's private rooms; register sales from the nonalcoholic beverages sold to patrons; and house fees paid by the dancers to the club. Following a test period audit conducted in 2005, the Division of Taxation concluded that the door admission charges and private dance sales were subject to sales tax, which petitioner had neglected to pay,[1] and issued a notice of determination assessing, insofar as is relevant to this proceeding, $124,921.94 in sales tax due plus interest.

Petitioner thereafter sought a redetermination, contending that the dances performed at the club—both on stage and in the private rooms—qualified as "dramatic or musical arts performances" and, therefore, the corresponding fees charged for those services were exempt from taxation under Tax Law § 1105 (f) (1). At the conclusion of the hearing that followed, the

---

1. Petitioner paid the applicable tax on the register sales, and the Division determined that the house fees were not taxable.

Administrative Law Judge (hereinafter ALJ) agreed, finding that the subject fees were not taxable under that provision. The ALJ also rejected the Division's assertion that liability alternatively could be imposed under Tax Law § 1105 (d) (i) and (f) (3). The Division filed an exception and, following oral argument, respondent Tax Appeals Tribunal reversed the ALJ's decision, concluding that sales tax liability could be imposed under each of the cited subdivisions. Petitioner then commenced this CPLR article 78 proceeding to challenge the Tribunal's determination.

It is well settled that "[s]tatutes creating tax exemptions must be construed against the taxpayer" (*Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d 44, 49 [1993] [internal quotation marks and citation omitted]; *see Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d 578, 582 [2006]; *Matter of 21 Club, Inc. v Tax Appeals Trib. of State of N.Y.*, 69 AD3d 996, 997 [2010]; *Matter of XO N.Y., Inc. v Commissioner of Taxation & Fin.*, 51 AD3d 1154, 1154-1155 [2008]), and the taxpayer, in turn, bears the burden of establishing that the requested exemption applies (*see id.*; *see also Matter of Lake Grove Entertainment, LLC v Megna*, 81 AD3d 1191, 1192 [2011]; *Matter of CBS Corp. v Tax Appeals Trib. of State of N.Y.*, 56 AD3d 908, 909 [2008], *lv denied* 12 NY3d 703 [2009]). To that end, it is not sufficient for the taxpayer to establish that its construction of the underlying statute is plausible; rather, the taxpayer must demonstrate that "its interpretation of the statute is . . . the only reasonable construction" (*Matter of CBS Corp. v Tax Appeals Trib. of State of N.Y.*, 56 AD3d at 910 [internal quotation marks and citations omitted]; *see Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d at 582; *Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin.*, 75 AD3d 931, 932 [2010], *lv denied* 16 NY3d 704 [2011]; *Matter of Astoria Fin. Corp. v Tax Appeals Trib. of State of N.Y.*, 63 AD3d 1316, 1318 [2009]). Our standard of review in this regard is limited, and "[t]he Tribunal's determination will not be disturbed if it is rationally based and is supported by substantial evidence in the record, even if a different result could have been reached" (*Matter of 21 Club, Inc. v Tax Appeals Trib. of State of N.Y.*, 69 AD3d at 997; *see Matter of Lake Grove Entertainment, LLC v Megna*, 81 AD3d at 1192). Applying these principles to the matter before us, we cannot say that the Tribunal erred in concluding that petitioner's proof as to the claimed exemptions fell short.

Tax Law § 1105 (f) (1) imposes a sales tax upon "[a]ny admission charge . . . in excess of ten cents to or for the use of any place of amusement in the state, *except charges for admission to*

. . . *dramatic or musical arts performances*" (emphasis added). For purposes of the statute, an "admission charge" means "[t]he amount paid for admission, including any service charge and any charge for entertainment or amusement or for the use of facilities therefor" (Tax Law § 1101 [d] [2]), and a "dramatic or musical arts admission charge" is defined as "[a]ny admission charge paid for admission to a theatre, opera house, concert hall or other hall or place of assembly for a live dramatic, choreographic or musical performance" (Tax Law § 1101 [d] [5]). Additionally, a "place of amusement" is defined as "[a]ny place where any facilities for entertainment, amusement, or sports are provided" (Tax Law § 1101 [d] [10]), which includes, without limitation, "a theatre of any kind . . . or other place where a performance is given" (20 NYCRR 527.10 [b] [3] [i]).

Although the parties debate whether petitioner's club may be deemed to be the functional equivalent of a theater-in-the-round—a notion expressly rejected by the Tribunal—there is no question that the club qualifies as a place of amusement under the expansive definition set forth in Tax Law § 1101 (d) (10) and the accompanying regulation.[2] Hence, the issue distills to whether the club's admission and private dance fees constitute charges for admission to a "live dramatic, choreographic or musical performance" (Tax Law § 1101 [d] [5]; *see* § 1105 [f] [1]).[3]

---

**2.** Contrary to the parties' respective assertions, we do not find the Court of Appeals' decision in *Matter of 1605 Book Ctr. v Tax Appeals Trib. of State of N.Y.* (83 NY2d 240 [1994], *cert denied* 513 US 811 [1994]), which addressed the applicability of Tax Law § 1105 (f) (1) to receipts derived from coin-operated peep show booths, to be dispositive of the matter now before us. The central issue in that case was whether the booths constituted places of amusement or, as the petitioner contended, "devices such as jukeboxes and video games" (*id.* at 244). Thus, the Court's finding that "[t]he booths are factually not taxably distinguishable from a usual theater except for the element of privacy" (*id.* at 245) does not speak to the underlying dispute here—namely, whether the dances offered at petitioner's club may be deemed to be choreographed performances.

**3.** In this regard, respondent Commissioner of Taxation and Finance argues on review that petitioner is not entitled to the cited exemption because it failed to establish that the fees collected by the club were "exclusively" attributable to, insofar as is relevant to this proceeding, a choreographed performance. Specifically, the Commissioner notes that the club's admission charge allows patrons to, among other things, mingle and converse with the dancers—activities that hardly may be construed as choreographed under any definition—and, therefore, such charge is not paid "solely" to view a choreographed performance. As evidence of this asserted exclusivity requirement, the Commissioner points to one of the examples (No. 4) set forth in 20 NYCRR 527.10 (d) (2)—the regulation governing admission charges excluded under Tax Law § 1105 (f).

Petitioner's expert witness, a cultural anthropologist who has conducted extensive research in the field of exotic dance, defined "choreography" as "the composition and arrangement of dances." Based upon her personal observations gleaned from a visit to petitioner's club, as well as her review of the dances depicted on the Nite Moves DVD entered into evidence at the administrative hearing and her interviews with certain of the club's dancers, the expert opined that "the presentations at Nite Moves are unequivocally live dramatic choreographic performances." In support of that opinion, the expert testified at length regarding the sequential components, aesthetics and principles of exotic dance and, in her report, set forth the choreographic sequence and characteristics of the on-stage dances she viewed on the foregoing DVD. The expert further concluded that the private dances performed at petitioner's club involved "similar kinds of movements" as those portrayed by the dancers she observed on stage and, therefore, also qualified as choreographed performances.

In our view, there can be no serious question that—at a bare minimum—petitioner failed to meet its burden of establishing that the private dances offered at its club were choreographed performances. Petitioner's expert, by her own admission, did not view any of the private dances performed at petitioner's club and, instead, based her entire opinion in this regard upon her observations of private dances performed in *other* adult entertainment venues. None of the DVDs entered into evidence at the administrative hearing depicted the private dances in question, and neither the generalized testimony—as offered by one of the club's dancers—that the private performances "still use[d] dance moves" nor that dancer's description of a particular move she often would employ while performing such a dance was sufficient to establish that these private performances were in fact choreographed. Given the dearth of evidence on this point, the Tribunal's conclusion that petitioner was not entitled to the requested exemption insofar as it related to the club's

Although the validity of this particular argument ultimately need not detain us (*see* infra), we note in passing that neither the text of the statute itself nor the language of the relevant implementing regulation limits the definition of "dramatic or musical arts admission charge" in this fashion (*see generally Matter of Cecos Intl. v State Tax Commn.*, 71 NY2d 934, 937 [1988]). Further, as "an example merely serves as a speculative and hypothetical illustration of a regulation, it is not entitled to the same degree of judicial deference as [the actual] regulation" (*Matter of St. Joe Resources Co. v New York State Tax Commn.*, 132 AD2d 98, 102 [1987], *revd on other grounds* 72 NY2d 943 [1988]; *see Matter of ADP Automotive Claims Servs. v Tax Appeals Trib.*, 188 AD2d 245, 249 [1993], *lv denied* 82 NY2d 655 [1993]) or, for that matter, the relevant statute.

couch/private dance sales was entirely rational and, as such, will not be disturbed.

We must reach a similar conclusion as to the taxability of petitioner's door admission charges. Although petitioner argues that the detailed testimony of its expert was more than sufficient to discharge its burden on this point, the Tribunal essentially discounted this testimony in its entirety, leaving petitioner with little more than the Nite Moves DVD to demonstrate its entitlement to the requested exemption. In this regard, while the Tribunal's definition of the term choreography did not differ significantly from the one employed by petitioner's expert, the Tribunal characterized the expert's interpretation of a choreographed performance as "stunningly sweeping"—deeming it to be "so broad as to include almost any planned movements [performed to] canned music." The Tribunal also noted what it construed as the expert's attempt to tailor her testimony and corresponding report to "neatly fit into the statutory exemption language" and viewed her testimony regarding the private dances offered at petitioner's club as particularly suspect, finding that "the certainty with which [the expert] holds to [her] conclusion[s], even in the absence of direct knowledge or observation of what occurs in the private areas at Nite Moves, undermine[s] her overall testimony." Credibility determinations, including the weight to be accorded to an expert's testimony, are matters that lie "solely within the province of the administrative factfinder" (*Matter of Kosich v New York State Dept. of Health*, 49 AD3d 980, 984 [2008], *lv dismissed* 10 NY3d 950 [2008]; *see Matter of Suburban Restoration Co. v Tax Appeals Trib. of State of N.Y.*, 299 AD2d 751, 752 [2002]; *Matter of Brahms v Tax Appeals Trib.*, 256 AD2d 822, 825 [1998]) and, "absent any indication of the arbitrary exercise of the power thus conferred" (*Matter of Pearson [Catherwood]*, 27 AD2d 598 [1966]), we lack the authority to disturb them (*see Matter of Gordon v Tax Appeals Trib.*, 243 AD2d 828, 830 [1997]). We perceive no such arbitrariness here.

Nor can we say that the Tribunal erred in concluding that the balance of petitioner's proof was insufficient to establish its entitlement to the exemption set forth in Tax Law § 1105 (f) (1). The record reflects that the club's dancers are not required to have any formal dance training and, in lieu thereof, often rely upon videos or suggestions from other dancers to learn their craft. The one dancer who testified at the hearing did not extensively discuss the nature of the performances encompassed by the club's door admission charge, and the Nite Moves DVD does not—standing alone—demonstrate that the on-stage

dances qualified as choreographed performances, thereby falling within the ambit of the cited exemption. Accordingly, inasmuch as the Tribunal's determination has a rational basis and petitioner failed to demonstrate its entitlement to the claimed exemption, the determination must be confirmed.

Petitioner next contends that, even if the sales at issue are taxable under Tax Law § 1105 (f) (1), those very same sales are "exempt" from taxation under Tax Law § 1105 (f) (3), the latter of which imposes sales tax upon "[t]he amount paid as charges of a roof garden, cabaret or other similar place in the state." To that end, Tax Law § 1101 (d) (12) defines a "roof garden, cabaret or other similar place" as "[a]ny roof garden, cabaret or other similar place which furnishes a public performance for profit, but not including a place where merely live dramatic or musical arts performances are offered in conjunction with the serving or selling of . . . refreshment[s] . . . , so long as such serving or selling . . . is merely incidental to such performances." Even assuming, among other things, that the cited provisions actually create a true "exemption,"[4] as opposed to simply limiting the definition of roof garden, cabaret or other similar place, we nonetheless find the Tribunal's denial of the claimed "exemption" to be rational.

The Tribunal expressly found that petitioner's club constituted a cabaret or similar place where a public performance is staged for profit, and the record as a whole certainly supports this finding. Indeed, petitioner acknowledges that it "might" be a cabaret but argues that, because it provides "live dramatic or musical arts performances" and its beverage sales are "merely incidental to such performances," it is outside the taxable reach of Tax Law § 1105 (f) (3). In this regard, although the Tribunal's decision focuses primarily upon whether the club's register sales from the nonalcoholic beverages sold qualify as incidental, implicit in its analysis of Tax Law § 1105 (f) (3)—and its corresponding rejection of petitioner's claimed "exemption" thereunder—is a finding that the dances offered at petitioner's club did not constitute "live dramatic or musical arts performances" within the meaning of the statute. Having already found that the Tribunal's resolution of that factual issue was rational, we need not proceed to consider whether petitioner's beverage sales would qualify as incidental.[5]

Finally, we find no merit to petitioner's various constitutional

---

**4.** Tax Law § 1123 was enacted in December 2006 to accomplish this feat (L 2006, ch 279, § 1).

**5.** In light of the foregoing, we also need not address the Tribunal's conclusions regarding the applicability of Tax Law § 1105 (d).

claims. Simply put, each of the statutory provisions at issue is facially neutral and in no way seeks to levy a tax upon exotic dance as a form of expression. Further, and contrary to petitioner's conclusory assertions, there is nothing in the record to suggest that the subject taxing scheme is being applied in a discriminatory manner. Notably, neither the Tribunal's decision nor the underlying statutes preclude an adult juice bar from qualifying for the claimed exemptions under a different set of circumstances, and the record as a whole fails to support petitioner's claim that the relevant fees were taxed for some reason other than the legitimate collection of sales tax revenues. In short, petitioner was denied the requested relief due not to the nature of its business but, rather, because of the inadequacy of its proof. Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, J.P., Spain, McCarthy and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.