[979 NE2d 1121, 955 NYS2d 795]

In the Matter of 677 NEW LOUDON CORPORATION, Doing Business as NITE MOVES, Appellant, v STATE OF NEW YORK TAX APPEALS TRIBUNAL et al., Respondents.

Argued September 5, 2012; decided October 23, 2012

### APPEARANCES OF COUNSEL

*W. Andrew McCullough, L.L.C.*, Midvale, Utah (*W. Andrew McCullough* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Robert M. Goldfarb, Andrew D. Bing* and *Barbara D. Underwood* of counsel), for respondents.

*Shafer & Associates, P.C.* (*Bradley J. Shafer*, of the Michigan bar, admitted pro hac vice, of counsel), and *Morrison & Foerster LLP*, New York City (*Hollis L. Hyans* and *R. Gregory Roberts* of counsel), for CMSG Restaurant Group LLC, amicus curiae.

### OPINION OF THE COURT

MEMORANDUM.

The judgment of the Appellate Division should be affirmed, with costs.

Petitioner, the operator of an adult "juice bar" in Latham, New York, contends that the admission charges and private dance performance fees it collects from patrons are exempt from state sales and use taxes. We agree with the Appellate Division that petitioner failed to meet its burden of proof that a tax exemption applies to those charges.

To begin, New York State collects taxes from a wide variety of entertainment and amusement venues. In particular, the Tax Law imposes a sales tax on "[a]ny admission charge" in excess of 10% for the use of "any place of amusement in the state" (Tax Law § 1105 [f] [1]). The legislature expansively defined places of amusement that are subject to this tax to include "[a]ny place where any facilities for entertainment, amusement, or sports are provided" (Tax Law § 1101 [d] [10]). The tax, therefore, applies to a vast array of entertainment including attendances at sporting events, such as baseball, basketball or football games, collegiate athletic events, stock car races, carnivals and fairs, amusement parks, rodeos, zoos, horse shows, arcades, variety shows, magic performances, ice shows, aquatic events, and animal acts (*see* 20 NYCRR 527.10). Plainly, no specific type of recreation is singled out for taxation.

1060

However, with the evident purpose of promoting cultural and artistic performances in local communities, the legislature created an exemption that excluded from taxation admission charges for a discrete form of entertainment—"dramatic or musical arts performances" (Tax Law § 1105 [f] [1]). In this case, petitioner claims, and the dissent agrees, that the legislature intended to give the adult entertainment business a tax break because the exotic stage and couch dances that are featured at the premises qualify as musical arts performances, rather than as more generalized amusement or entertainment activities that fall within the broad sweep of the tax. We disagree.

It is well established that a taxpayer bears the burden of proving any exemption from taxation (see Matter of Grace v New York State Tax Commn., 37 NY2d 193, 195 [1975]). "Furthermore, in construing a tax exemption statute, the well-settled rule is that '[i]f ambiguity or uncertainty occurs, all doubt must be resolved against the exemption' " (Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 582 [2006]). This is so because "an exemption is not a matter of right, but is allowed only as a matter of legislative grace" (Matter of Grace v New York State Tax Commn., 37 NY2d at 196). Thus, a determination by the Tax Appeals Tribunal that a taxpayer does not qualify for a tax exemption should not be disturbed "unless shown to be erroneous, arbitrary or capricious" (id. at 195-196).

In order for petitioner to be entitled to the exclusion for "dramatic or musical arts performances," it was required to prove that the fees constituted admission charges for performances that were dance routines qualifying as choreographed performances. Petitioner failed to meet this burden as it related to the fees collected for the performances in so-called "private rooms"; none of the evidence presented depicted such performances and petitioner's expert's opinion was not based on any personal knowledge or observation of "private" dances that happened at petitioner's club. Thus, the Appellate Division properly concluded that the activities conducted in the private rooms failed to qualify for the exemption.

Further, it was not arbitrary, capricious or an error of law for the Tax Appeals Tribunal to find that petitioner failed to meet the same burden as it pertained to the admission charges for the stage performances. The Tribunal discredited the expert's opinion that the routines qualified as choreographed performances, a

determination well within its province (*see generally Matter of Di Maria v Ross*, 52 NY2d 771 [1980]). The Tribunal articulated a rational basis for discrediting her; it found her testimony was compromised by her opinion that the private performances were the same as the main stage performances despite the fact that she neither observed nor had personal knowledge of what occurred in the private areas.

Clearly, it is not irrational for the Tax Tribunal to decline to extend a tax exemption to every act that declares itself a "dance performance." If ice shows presenting pairs ice dancing performances, with intricately choreographed dance moves precisely arranged to musical compositions, were not viewed by the legislature as "dance" entitled a tax exemption, surely it was not irrational for the Tax Tribunal to conclude that a club presenting performances by women gyrating on a pole to music, however artistic or athletic their practiced moves are, was also not a qualifying performance entitled to exempt status. To do so would allow the exemption to swallow the general tax since many other forms of entertainment not specifically listed in the regulation will claim their performances contain tax-exempt rehearsed, planned or choreographed activity.

Because we conclude that the charges and fees were taxable under Tax Law § 1105 (f) (1), we need not consider whether petitioner met its burden that the admission charges were not subject to tax pursuant to section 1105 (f) (3) of the Tax Law.

Petitioner's remaining constitutional argument is unavailing.

SMITH, J. (dissenting). The ruling of the Tax Appeals Tribunal, which the majority upholds, makes a distinction between highbrow dance and lowbrow dance that is not to be found in the governing statute and raises significant constitutional problems. I therefore dissent.

The dispositive question is whether the charges the State seeks to tax are paid for admission to a "choreographic . . . performance" (Tax Law § 1101 [d] [5]). I find it clear that the legislature used "choreographic" in its statutory definition of "[d]ramatic or musical arts admission charge" merely as a synonym for "dance." Strictly speaking, it is true, not all dance is choreographed—some may be improvised—but it is absurd to suggest (and I do not read the majority opinion to suggest) that the legislature meant to tax improvised dance while leaving choreographed dance untaxed. In any event the record shows, without contradiction, that the performances here were largely planned, not improvised.

That the statutory word "choreographic" simply means "dance" is confirmed by a regulation of the Department of Taxation and Finance. The regulation gives this example of "[a]dmissions excluded from tax":

> "A theatre in the round has a show which consists exclusively of dance routines. The admission is exempt since choreography is included within the term musical arts" (20 NYCRR 527.10 [d] [2] [*example* 4]).

The regulation assumes that "choreography" includes all "dance routines"—it does not matter what kind of dancing is being done.

Thus, the only question in the case is whether the admission charges that the State seeks to tax were paid for dance performances. There is not the slightest doubt that they were. That is proved by the video introduced into evidence before the Tribunal, and the testimony of two witnesses, an executive of petitioner and a dancer, with personal knowledge. The people who paid these admission charges paid to see women dancing. It does not matter if the dance was artistic or crude, boring or erotic. Under New York's Tax Law, a dance is a dance.

The majority, and the Tribunal, have implicitly defined the statutory words "choreographic . . . performance" to mean "highbrow dance" or "dance worthy of a five-syllable adjective." The admission charges for these performances are taxable because the performances are, in the majority's view, not "cultural and artistic" (majority mem at 1060). The Tribunal took a similar view, finding that the dancers did not put the care into their efforts that high art requires: "We question how much planning goes into attempting a dance seen on YouTube," the Tribunal remarked. It is undisputed that the dancers worked hard to prepare their acts, and that pole dancing is actually quite difficult, but the Tribunal decided that they were not artists, but mere athletes: "[T]he degree of difficulty is as relevant to a ranking in gymnastics as it is [in] dance." The Tribunal seems to have missed the point that "ranking," either of gymnasts or dancers, is not the function of a tax collector.

The majority implies that since the legislature did not exclude from the entertainment tax other lowbrow forms of entertainment, such as baseball games and animal acts (*see* majority mem at 1059), it would not have wanted to exclude pole dancing; but the issue is not what the legislature would have wanted to do, but what it did. If the legislature wanted to tax all

"choreographic . . . performances" except pole dancing, it could (assuming there are no constitutional problems) have said so, but the Tribunal has no authority to write that exception into the statute. And if, as the majority claims, a Department regulation purports to extend the tax to ice shows with "intricately choreographed dance moves" (majority mem at 1061), that is a problem with the regulation. It does not change the statute.

Since I view the only question—an extremely easy question—to be whether these women were dancing or not, I find the expert testimony in this case entirely irrelevant. It was perhaps a mistake for petitioner to call an expert, in an attempt to impress the Tribunal with the cultural value of the entertainment that its juice bar provides. I find the majority's and the Tribunal's discussions of the expert's testimony unfair—indeed, the Tribunal's discussion (which says the testimony came in through a "continuous stream of leading questions") is simply inaccurate. But it does not matter, because the expert's testimony was superfluous.

Like the majority and the Tribunal, I find this particular form of dance unedifying—indeed, I am stuffy enough to find it distasteful. Perhaps for similar reasons, I do not read Hustler magazine; I would rather read the New Yorker. I would be appalled, however, if the State were to exact from Hustler a tax that the New Yorker did not have to pay, on the ground that what appears in Hustler is insufficiently "cultural and artistic." That sort of discrimination on the basis of content would surely be unconstitutional (*see Arkansas Writers' Project, Inc. v Ragland*, 481 US 221, 229-230 [1987]). It is not clear to me why the discrimination that the majority approves in this case stands on any firmer constitutional footing.

Judges CIPARICK, GRAFFEO, PIGOTT and JONES concur; Judge SMITH dissents in an opinion in which Chief Judge LIPPMAN and Judge READ concur.

Judgment affirmed, with costs, in a memorandum.