[40 NYS3d 412]

CMSG Restaurant Group, LLC, Doing Business as Larry Flynt's Hustler Club, et al., Appellants, v State of New York et al., Respondents.

First Department, November 3, 2016

APPEARANCES OF COUNSEL

*Shafer & Associates, P.C.*, Lansing, Michigan (*Bradley Jay Shafer* of the Michigan bar, admitted pro hac vice, of counsel), and *Kaiser Sauborn & Mair, P.C.*, New York City (*Henry L. Sauborn, Jr.* of counsel), for appellant.

*Eric T. Schneiderman*, *Attorney General*, New York City (*Matthew W. Grieco* and *Andrew D. Bing* of counsel), for respondents.

**OPINION OF THE COURT**

Tom, J.P.

In this appeal, plaintiffs, which operate a men's entertainment club located on the Upper West Side of Manhattan, challenge the "Amusement Tax" (Tax Law § 1105 [f] [1]) and the "Cabaret Tax" (Tax Law § 1105 [f] [3]) (together, the tax laws) as unconstitutional on their face and as applied to them. Specifically, they challenge the sales taxes imposed by defendants on plaintiffs' "Beaver Bucks" or "scrips"—plaintiffs' in-house currency used by patrons at plaintiffs' club to tip topless dancers, floor hosts and bartenders, and to gain admission to private rooms to view entertainers and for lap dances.

Plaintiffs assert that the tax laws infringe on their right to free speech under the United States and New York Constitutions, by imposing a differential tax on protected expression based on content, thereby penalizing disfavored expression without furthering any important governmental interest. Plaintiffs also claim that the tax laws violate the Equal Protection Clauses of the United States and New York Constitutions by discriminating against protected expression based on its content, and allowing for different treatment of New York businesses engaging in constitutionally protected activities. Moreover, plaintiffs contend that the exemptions to the tax laws are unconstitutionally vague in giving unbridled discretion to defendants in determining who should and should not pay the taxes. In addition, plaintiffs claim that the tax laws deprived them of their right to procedural due process. Finally, plaintiffs contend that the performances at the club fall under the exemptions to the tax laws.

Plaintiff CMSG Restaurant Group, LLC is a Nevada limited liability company which does business in New York. The other four plaintiffs are individual members of CMSG. CMSG does business as Larry Flynt's Hustler Club in a building located at 641 West 51st Street, in Manhattan. The club "regularly pres-

ents . . . dance entertainment," "some of which involves clothed entertainers and some of which involves entertainers performing while 'topless.' "

Customers pay a cover charge to enter the club and, once inside, buy "Beaver Bucks" or "scrips" which bear the following statement: "Good for entertainers and tips only." Accordingly, the scrips cannot be redeemed for beverages, merchandise, or the cover charge required to enter the club.

On or about August 10, 2009, following an audit of the club covering the period June 1, 2006 to November 30, 2008, defendant New York State Department of Taxation and Finance (DTF) issued a notice of determination, finding that the club owed over $4.8 million, plus interest and penalties, in sales tax. After a conference with plaintiffs pursuant to Tax Law § 170 (3-a), DTF reassessed the club's outstanding taxes at $2,113,204.38, plus interest, with no penalty. This tax liability is based in part on the sale of scrips.

Plaintiffs filed a petition with the New York State Division of Tax Appeals (DTA) challenging the determination, and a hearing was held before an administrative law judge (ALJ). The ALJ found that receipts from scrip sales during the period at issue totaled $23,816,540 and upheld DTF's assessment. Specifically, she concluded that the club was subject to the Amusement Tax and did not qualify for an exemption, explaining:

> "This case involves charges for admission into a place of amusement, plain and simple. This adult entertainment establishment provides a service to its patrons that essentially boils down to performers who remove their clothing and create an aura of sexual fantasy. I find that this service is delivered by means of a striptease act that incorporates some elements of dance . . . . The plain facts of this case have been obfuscated in an attempt to characterize these performances in such a way as to take advantage of an exemption available to live dramatic, choreographic performances. However, the service provided by the entertainers at the Hustler Club is sexual fantasy, not dance."

The ALJ added that any "movements, whether dance moves or other choreography, that comprise an entertainer's routine and that appeal to the patron, are ancillary to the ultimate service sold, which is sexual fantasy."

In the alternative, the ALJ found that even if plaintiffs had otherwise demonstrated that the scrip charges were exempt, plaintiffs' record-keeping practices would have precluded the ALJ from granting an exemption. The ALJ explained that plaintiffs' records lumped together all of the scrip sales, failing to reflect that entertainers redeemed the scrips at a different rate from non-entertainer employees, such as bartenders.

Plaintiffs filed an administrative appeal of the ALJ's decision with the Tax Appeals Tribunal. However, not long after, they commenced this action in Supreme Court; the administrative appeal was held in abeyance by the tribunal pending the disposition of this action.

In this action, plaintiffs seek a declaration that the tax laws, including their exemptions, are unconstitutional, both on their face and as applied to plaintiffs. The complaint also seeks preliminary and permanent injunctions enjoining DTF from enforcing the tax laws against plaintiffs, and ordering DTF to refund all tax payments made by plaintiffs under the tax laws. In support of their requests for injunctive relief, plaintiffs argued that the "loss of First Amendment freedoms" would constitute irreparable injury.

Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (2) and (7). Supreme Court granted defendants' motion to dismiss the complaint, and denied plaintiffs' motion for injunctive relief. Initially, the court stated, in general, that "the exhaustion of administrative remedies doctrine requires that plaintiffs await the decision of the Tribunal and, if the decision is not satisfactory, file an Article 78 petition" (2015 NY Slip Op 32611[U], *8 [2015]). While the court recognized certain exceptions to the requirement of exhaustion of administrative remedies, the court found that "plaintiffs fail to show that the [tax laws are] wholly inapplicable to the Club or that waiting for the Tribunal's decision would be futile or that it would cause irreparable injury" (id.). Accordingly, the court found that plaintiffs' " 'as-applied' constitutional challenge" was barred (id.). The court also rejected plaintiffs' facial constitutional challenges to the tax laws on the merits.

For the reasons set forth below, we conclude that Tax Law § 1105 (f) (1) and (3) are constitutional, and do not violate plaintiffs' right to free speech or their right to equal protection of the laws (see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 85 AD3d 1341, 1346-1347 [3d Dept 2011], affd 19 NY3d 1058 [2012], cert denied 571 US —, 134 S Ct 422

[2013]; *see also Stahlbrodt v Commissioner of Taxation & Fin. of State of N.Y.*, 92 NY2d 646, 649-651 [1998]). We reject plaintiffs' contentions that the laws are unconstitutionally vague or deny them procedural due process. We also find that plaintiffs' argument that the performances presented at the club were exempt from the sales taxes at issue is not properly raised in this action, due to the statute's exclusive remedy provision (Tax Law § 1140). We modify solely to declare Tax Law § 1105 (f) (1) and (3) constitutional (*see Stahlbrodt*, 92 NY2d at 652 ["the proper disposition of this declaratory action is an adverse declaration to the plaintiffs, rather than a dismissal of the complaint"]), and otherwise affirm.

Initially, because plaintiffs challenge the tax laws as unconstitutional and as wholly inapplicable to them, these claims are not limited by an exclusive administrative remedy (*see Bankers Trust Corp. v New York City Dept. of Fin.*, 1 NY3d 315, 321 [2003]; *Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]), and may be considered on the merits.

"New York State collects taxes from a wide variety of entertainment and amusement venues" (*New Loudon*, 19 NY3d at 1059). Under the Amusement Tax, a sales tax of 4% is imposed on "[a]ny admission charge . . . in excess of ten cents to or for the use of any place of amusement in the state," with inapplicable exceptions (Tax Law § 1105 [f] [1]). A "[p]lace of amusement" is defined as "[a]ny place where any facilities for entertainment, amusement, or sports are provided" (Tax Law § 1101 [d] [10]). DTF has interpreted that definition to include "sporting events, . . . stock car races, carnivals and fairs, amusement parks, rodeos, zoos, horse shows, arcades, variety shows, magic performances, ice shows, aquatic events, and animal acts" (*New Loudon*, 19 NY3d at 1059, citing 20 NYCRR 527.10).

The statute provides an exemption to the Amusement Tax. "[W]ith the evident purpose of promoting cultural and artistic performances in local communities, the legislature created an exemption that excluded from taxation admission charges for a discrete form of entertainment—'dramatic or musical arts performances'" (*New Loudon*, 19 NY3d at 1060, quoting Tax Law § 1105 [f] [1]). A "[d]ramatic or musical arts admission charge" is "[a]ny admission charge paid for admission to a theatre, opera house, concert hall or other hall or place of assembly for a live dramatic, choreographic or musical performance" (Tax Law § 1101 [d] [5]).

According to guidelines published by DTF, if "[a] theatre in the round has a show which consists exclusively of dance routines[,] [t]he admission is exempt [from the Amusement Tax] since choreography is included within the term musical arts" (20 NYCRR 527.10 [d] [Example 4]). In contrast, if a "show" is "composed of several acts in which performers dressed as story-book characters, appearing with musical accompaniment, portray scenes from books, and invite audience participation," that show is not exempt from the Amusement Tax (id. [Example 5]).

The State also imposes a Cabaret Tax, which levies a 4% sales tax on "[t]he amount paid as charges of a roof garden, cabaret or other similar place in the state" (Tax Law § 1105 [f] [3]). Notably, only a single 4% sales tax is imposed on a given charge to which the Cabaret Tax, the Amusement Tax, or both are applicable. The Cabaret Tax generally applies to "[a]ny roof garden, cabaret or other similar place which furnishes a public performance for profit" (Tax Law § 1101 [d] [12]). The Cabaret Tax does not apply to "a place where merely live dramatic or musical arts performances are offered in conjunction with the serving or selling of food, refreshment or merchandise," where "such serving or selling of food, refreshment or merchandise is merely incidental to such performances" (id.). However, "[t]he portion of the amount paid as the charge of a roof garden, cabaret or other similar place in the state for admission to attend a dramatic or musical arts performance at the place shall be exempt from" the Cabaret Tax, only if certain requirements are met (Tax Law § 1123), such as charging separately for admission (Tax Law § 1123 [a]) and keeping records of all "charges for food, drink, service, merchandise and admission" (Tax Law § 1123 [c]).

For example, according to guidelines published by DTF, if a "hotel provides an orchestra and dance floor surrounded by tables, and serves refreshments to its patrons during the dancing hours [and] [n]o separate charge is made for dancing . . . [t]his is a public performance where all charges for refreshments are taxable" under the Cabaret Tax (20 NYCRR 527.12 [a] [Example 2]).

Our holding in this matter is prescribed by the Court of Appeals' decision in New Loudon. That case similarly involved a challenge to the tax laws. Specifically, the petitioner in New Loudon operated an adult juice bar located in the Town of Colonie, Albany County, where patrons could view exotic dances

performed by women in various stages of undress. In a CPLR article 78 proceeding, the petitioner challenged a tax assessment made by the Tax Appeals Tribunal, arguing that the taxes infringed on its First Amendment right to free speech and expression, and violated its right to equal protection.

The Third Department rejected the petitioner's "various constitutional claims," reasoning that "each of the [tax laws] is facially neutral and in no way seeks to levy a tax upon exotic dance as a form of expression" (85 AD3d 1341, 1346-1347). The Third Department also found that the tax laws were not "being applied in a discriminatory manner" (*id.* at 1347).

In affirming that decision, the Court of Appeals did not set forth its own constitutional analysis, but simply stated that the petitioner's "constitutional argument is unavailing" (19 NY3d at 1061). Significantly, however, the Court of Appeals, upon reviewing the tax laws, found that "no specific type of recreation is singled out for taxation" and also that the legislature, "with the evident purpose of promoting cultural and artistic performances in local communities, . . . created an exemption that excluded from taxation admission charges for a discrete form of entertainment—'dramatic or musical arts performances' " (19 NY3d at 1059-1060). Accordingly, the Court of Appeals' decision affirming the Third Department's rejection of the First Amendment and equal protection claims is binding on the issue of whether the tax laws violate the right to free speech and equal protection.

In any event, the Court of Appeals has made clear that the legislature may enact tax exemptions to subsidize certain forms of expression "to the advantage of some forms of expression or speakers, but not others" (*Stahlbrodt*, 92 NY2d at 649). In *Stahlbrodt*, the plaintiff was a publisher of "a weekly [pennysaver] advertising paper" called "The Shopping Bag," which was distributed for free in Monroe County, New York (*id.* at 648). The plaintiff was assessed sales taxes, pursuant to Tax Law § 1105, on the printing services he had purchased in publishing the paper. The plaintiff claimed the paper qualified for a tax exemption on purchases of printing services as a "shopping paper" under Tax Law § 1115 (*id.*). DTF disagreed, and on plaintiff's administrative challenge, the Tax Appeals Tribunal upheld the assessment, concluding that plaintiff failed to qualify for the exemption because the Shopping Bag did not meet the requirement of Tax Law § 1115 (i) (C) that its advertising copy not exceed 90% of the printed area of "all issues as averaged on an annual basis" (*see* 92 NY2d at 648).

The *Stahlbrodt* plaintiff argued that DTF's determination that it was not entitled to an exemption under Tax Law § 1115 (i) (C), since more than 90% of its copy consisted of advertising, violated the First Amendment because "the 90 percent rule constitutes content-based discrimination against certain forms of expression" and "singles out a small subset of newspapers for differential tax treatment" (92 NY2d at 648). The Court of Appeals rejected the claim, finding that there is a "crucial constitutional distinction . . . between direct, content-based discriminatory regulation or penalization of expression, on the one hand, and subsidization of some expressions to encourage activities deemed socially desirable while remaining neutral as to other expressions" (*id.* at 651). The Court of Appeals explained that the latter, but not the former, is "presumptively valid," and is "invalid only if [the legislature] were to discriminate invidiously in its subsidies in such a way as to aim at the suppression of dangerous ideas" (*id.* at 650 [internal quotation marks and emphasis omitted]). Therefore, "a differential tax exemption scheme involving forms of expression . . . only becomes constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints" (*id.* [internal quotation marks omitted]). "The threat to particular ideas or viewpoints may be embodied in taxes singling out the press for a special burden, targeting a small group of speakers, or discriminating on the basis of the content of the ideas expressed by the taxpayer" (*id.*).

Further, the Court of Appeals stressed that the tax law at issue in *Stahlbrodt*, like the ones here, "is one of general application, levied against virtually all final sales of products and services" (*id.*). Accordingly, the Court concluded that no enterprise was singled out for special treatment. The Court of Appeals further reasoned that "the 90 percent rule does not enforce any differential treatment based on the content of ideas or viewpoints expressed in" the publication (*id.*). In that regard, the Court of Appeals emphasized that "absent invidious discrimination, the Legislature can pick and choose between the forms of expression it decides to subsidize through a tax exemption" (*id.*, citing *Regan v Taxation With Representation of Wash.*, 461 US 540 [1983] [holding that tax exemption for nonprofit civic welfare organizations did not violate First Amendment by excepting organizations engaged in lobbying for legislation]).

■ Here, the tax laws are laws "of general application" (92 NY2d at 650). The Amusement Tax applies to sales at "[a]ny

place where any facilities for entertainment, amusement, or sports are provided" (Tax Law § 1101 [d] [10]), and the Cabaret Tax applies to sales at "[a]ny roof garden, cabaret or other similar place which furnishes a public performance for profit" (Tax Law § 1101 [d] [12]). The tax laws "ha[ve] not selected a narrow group to bear fully the burden of the tax" (*Leathers v Medlock*, 499 US 439, 448 [1991]), since the taxes imposed on plaintiffs are equally applicable to many other types of entertainment and recreational activities, including sporting events, car races, amusement parks, arcades, zoos, animal performances, and magic acts (*see New Loudon*, 19 NY3d at 1059, citing 20 NYCRR 527.10). Nor are the performances of the sort presented at the Hustler Club "singled out for special treatment" (*Stahlbrodt*, 92 NY2d at 650) based on their erotic, sexual, or adult nature. The performances merely happen to fall under the very broad categories of "entertainment" or "amusement," for purposes of the Amusement Tax, and "public performance for profit," for purposes of the Cabaret Tax.

Moreover, the tax laws "do[ ] not enforce any differential treatment based on the content of ideas or viewpoints expressed in" the entertainment provided at the club (*Stahlbrodt*, 92 NY2d at 650). By enacting the exemptions for certain types of entertainment—such as live theatre, musical performances, and choreographed dancing (as opposed to spontaneous dancing, whether erotic or otherwise)—the legislature simply exercised its authority to "pick and choose between the forms of expression it decides to subsidize through a tax exemption" (*id.*). Such a legislative act is "presumptively valid," and plaintiffs failed to rebut that presumption, since they failed to demonstrate any unreasonableness in the distinction between the exempt and nonexempt forms of entertainment, or point to any "invidious discrimination" (*id.*).

There is another significant legal point to this case. In *New Loudon* (19 NY3d 1058), the establishment charged customers specifically for dance performances. As Supreme Court put it, here, by contrast,

> "the Club used scrips as a form of in-house currency for a variety of purposes, including admissions to private rooms, and to pay for a variety of services, including lap dancers and tips to entertainers, hosts and bartenders. Thus the tax is not singling out the dancing at the Club, but rather, equally applying the tax to sale of the scrips by ap-

plying the statutory provisions in a facially neutral manner." (2015 NY Slip Op 32611 [u], *11-12.)

In short, the tax laws at issue are not even directed specifically at the dancing at plaintiffs' club, but rather at the sale of plaintiffs' "Beaver Bucks" which are used for multiple purposes in the club. Undoubtedly, there can be no meritorious First Amendment challenge to imposing taxes on the sale of such multiuse in-house currency.

We do not question plaintiffs' point that "exotic dancing—in the form of clothing, 'topless,' and even fully nude entertainment—" is protected by the First Amendment (*see Erie v Pap's A.M.*, 529 US 277, 289 [2000] ["nude dancing of the type at issue here is expressive conduct, although we think that it falls only within the outer ambit of the First Amendment's protection"] [four-Justice plurality op]). But nothing in these tax laws prohibits such expressive conduct. Rather, they simply evidence the legislature's desire to "encourage activities deemed socially desirable while remaining neutral as to other expressions" (*Stahlbrodt*, 92 NY2d at 651).

Indeed, this is precisely why plaintiffs' reliance on cases involving "direct, content-based discriminatory regulation or penalization of expression" (*id.*) or a prior restraint on speech is misplaced. Plaintiffs focus on *Reed v Town of Gilbert* (576 US —, 135 S Ct 2218 [2015]), which they say "announced a paradigm shift in the constitutional analysis used to differentiate 'content neutral' from content specific laws." The local law found unconstitutional in *Reed* prohibited anyone from displaying outdoor signs without a permit, with exemptions for 23 categories of signs, including "[i]deological" signs, meaning ones intended to communicate "a message or ideas" for noncommercial purposes, and "[p]olitical" signs, meaning ones seeking to influence the results of a public election (576 US at —, 135 S Ct at 2224). However, different restrictions applied to different exempt categories; for instance, ideological signs were treated more favorably than political signs as they could be placed in all zoning districts and without time limits (*id.* at 2224-2225). The Supreme Court stated:

> "Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny" (576 US at —, 135 S Ct at 2228).

Yet, *Reed* is distinguishable since it concerned a law that prohibited speech outside of certain restrictions. The tax laws challenged here do not prohibit any speech under any circumstances but merely involve the payment of a broadly applicable sales tax. The Supreme Court in *Reed* was animated by the concern that "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech" (576 US at —, 135 S Ct at 2229). However, this case concerns laws that do not even have the potential to be used to suppress; the speaker will at worst be subjected to a small sales tax. Moreover, plaintiffs' contention that *Reed* "represents a radical departure from previous precedent on how courts . . . must determine the level of scrutiny applicable to laws that . . . impact protected expression" is belied by the Supreme Court's indication in *Reed* that it was merely applying the same approach it had "repeatedly" taken before—citing five cases (576 US at —, 135 S Ct at 2228), all but one of which predated *Leathers*, which the Court of Appeals found controlling in *Stahlbrodt*.

Similarly, plaintiffs are not aided by citing to *City of Ladue v Gilleo* (512 US 43 [1994]), in which the Supreme Court struck down a city's ban on almost all signage posted on residential properties, but allowed more types of signage to be posted by commercial, religious, and other entities on their properties (*id.* at 46-47). The Supreme Court found that the regulation "almost completely foreclosed a venerable means of communication" as to "political, religious, or personal messages" (*id.* at 54) and placed great emphasis on the value of signs in allowing private citizens a uniquely inexpensive, personal, and local means of expression (*see id.* at 56-57).

Nor are plaintiffs helped by *Murdock v Pennsylvania* (319 US 105 [1943]), in which the Supreme Court struck down a law under which the petitioners had been fined for door-to-door sales of religious literature without paying a required license tax. In *Murdock*, the Supreme Court found that law "quite different, for example, from a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities," since the law at issue "restrain[ed]" the pursuit of constitutionally protected activities "in advance" (*id.* at 112, 114). As noted, in contrast, payment of the sales tax at issue here was not a precondition or restraint on the exercise of the club's right to present the performances at issue.

Plaintiffs also argue that the tax laws violate the Equal Protection Clauses of the Federal and New York State Constitutions since they exempt "live dramatic, choreographic or musical performances," yet "[p]erformances that do not meet these subjective standards are . . . burdened by additional governmental taxation." Plaintiffs suggest that any such distinction is irrational, even if the burdened activity constitutes "purely sexually explicit expression." We find no merit to this claim.

The Equal Protection Clause of the US Constitution requires that "all persons similarly situated should be treated alike" (*Tennessee v Lane*, 541 US 509, 522 [2004] [internal quotation marks omitted]), and the counterpart provision in the New York Constitution "is no broader in coverage" (*Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344, 360 n 6 [1985]). However, "[f]or purposes of equal protection review, any classification creating differential taxation enjoys a strong presumption of constitutionality" (*Osborn Mem. Home Assn. v Chassin*, 100 NY2d 544, 547 [2003]). As long as the tax law "neither utilizes a suspect classification nor impairs a fundamental right," it "must be upheld if rationally related to achievement of a legitimate state purpose" (*id.*).

■ Rational basis review is applicable to this matter since plaintiffs do not allege any suspect classification, and the tax laws do not impair plaintiffs' fundamental right to free speech. We find that the tax exemptions for dramatic, musical, and artistic performances are rationally related to the legitimate "purpose of promoting cultural and artistic performances in local communities" (*New Loudon*, 19 NY3d at 1060), and thus do not deprive any class of businesses of equal protection of the law (*see Stahlbrodt*, 92 NY2d at 648 [rejecting claim that tax exemption for newspapers consisting of less than 90% advertising, "denies a class of shopping papers equal protection of the laws"]).

Nor are the exemptions for live dramatic, choreographic, or musical performances unconstitutionally vague, as the plaintiffs contend. In particular, plaintiffs argue that a tax auditor who testified at the administrative hearing failed to clarify "how a determination could be made as to whether a given performance was sufficiently dramatic, . . . choreographic, or musical to fall within the statutory exclusion from taxation."

Generally, "[u]nder the First and Fifth Amendments, speakers are protected from arbitrary and discriminatory enforcement of vague standards" (*National Endowment for Arts v*

*Finley*, 524 US 569, 588 [1998]). However, even if statutory terms "could raise substantial vagueness concerns" "if they appeared in a criminal statute or regulatory scheme," "the consequences of imprecision are not constitutionally severe" where, as here, the government is merely subsidizing the arts (*id.* at 588-589).

Moreover, "[i]n economic regulation especially, . . . administrative regulation will often suffice to clarify a standard with an otherwise uncertain scope" and avoid "potentially vague or arbitrary interpretations of the ordinance" (*Hoffman Estates v Flipside, Hoffman Estates, Inc.*, 455 US 489, 504 [1982]). As defendants note, any taxpayer may seek an advisory opinion from DTF on any issue of tax liability under a "specific set of facts" (Tax Law § 171 [Twenty-fourth]). The opinion, which must be issued within 90 days of the request, becomes binding with respect to that particular taxpayer, and may be modified only prospectively, not retroactively (*see id.*). Thus, even if the language used in the exemptions is somewhat vague, which is not the case here, the opportunity for businesses to obtain an official clarification of whether the exemptions apply to them is sufficient to allay any concerns about unpredictable enforcement.

Plaintiffs next claim that the tax laws violate procedural due process because

> "a determination as to whether or not live enter-
> tainment performances fall within the [exemptions]
> are dependent upon a review of the content of those
> . . . performances, but an [a]uditor will never be
> able to view the actual live . . . performances in
> question for an audit initiated after the conclusion
> of [the] tax year in question."

Plaintiffs further contend that it would be "virtually impossible for a taxpayer presenting live entertainment to establish its entitlement to these exclusions given that it cannot be expected to videotape literally every single entertainment performance that occurs during an audit period."

These arguments are unavailing. Plaintiffs' position would seem to lead to the absurd conclusion that no sales tax can be constitutionally imposed on any live performances regularly presented by a business. Although an audit will naturally take place after any allegedly taxable live performances have already occurred, a business has the right to present evidence of the nature of the performances at issue, such as testimony about performances during the period under audit or video

footage of representative performances which are subject to a credibility analysis by the hearing officer.

To the extent plaintiffs argue that "the taxes in question are being assessed without the auditors ever having viewed any performances," we read this as a challenge to the weight of the evidence in this particular case under the guise of a facial due process claim. As set forth below, any such fact-specific claims are not properly raised in this action.

■ Plaintiffs' argument that the specific performances presented at Larry Flynt's Hustler Club were exempt from the sales taxes at issue is not properly raised in this action, due to the statute's exclusive remedy provision (Tax Law § 1140). That section provides that "no determination or proposed determination of tax . . . shall be enjoined or reviewed by an action for declaratory judgment, . . . or by any action or proceeding other than a proceeding under article seventy-eight of the [CPLR]." Nor does plaintiffs' contention fall under the exception for claims challenging a statute "as wholly inapplicable" (*Bankers Trust Corp. v New York City Dept. of Fin.*, 1 NY3d 315, 321 [2003]). Plaintiffs' argument that exhaustion of administrative remedies would be futile is misplaced, since that exception to the judicial doctrine of exhaustion is superseded by the statutory exclusive remedy provision (*see id.* at 322).

In light of the foregoing, the court properly denied plaintiffs' motion for injunctive relief.

Accordingly, the order of the Supreme Court, New York County (Anil C. Singh, J.), entered January 30, 2015, which granted defendants' motion to dismiss the complaint, and denied plaintiffs' motion for preliminary and permanent injunctions, should be modified, on the law, solely to declare Tax Law § 1105 (f) (1) and (3) constitutional, and should otherwise be affirmed, without costs.

SAXE, RICHTER, GISCHE and WEBBER, JJ., concur.

Order, Supreme Court, New York County, entered January 30, 2015, modified, on the law, to declare Tax Law § 1105 (f) (1) and (3) constitutional, and otherwise affirmed, without costs.