*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 23, 2014                516631
_____

In the Matter of ATLAS VAN
    LINES, INC.,
                    Petitioner,

        v                                    OPINION AND JUDGMENT

TAX APPEALS TRIBUNAL OF THE
    STATE OF NEW YORK et al.,
                    Respondents.
_____

Calendar Date:   September 5, 2014

Before:   Stein, J.P., McCarthy, Egan Jr., Lynch and Clark, JJ.

                    _____

        Bond, Schoeneck & King, PLLC, Albany (Arthur Siegel of
counsel), for petitioner.

        Eric T. Schneiderman, Attorney General, Albany (Robert M.
Goldfarb of counsel), for respondents.

                    _____

Egan Jr., J.

        Proceeding pursuant to CPLR article 78 (initiated in this
Court pursuant to Tax Law § 2016) to review a determination of
respondent Tax Appeals Tribunal which sustained a highway use tax
assessment imposed under Tax Law article 21.

        Petitioner is a motor carrier registered by the Federal
Motor Carrier Safety Administration and, at all times relevant,
was engaged in the interstate transportation of household goods
and other property for a fee.  To that end, petitioner's federal
registration vested it with the authority to transport shipments
of such goods either through New York, from points outside New
York into the state or from New York to points outside the state

(see 49 §§ USC 13501 [1] [A], [B]; 13901).  This proceeding concerns the taxability of certain of petitioner's interstate shipments of household goods during the audit period at issue. Before addressing the particulars of this dispute, however, a review of the relevant state and federal provisions governing the definition of household goods and the taxability of such shipments is in order.

Insofar as is relevant here, Tax Law § 503 (1) imposes "a highway use tax for the privilege of operating any vehicular unit upon the public highways of this state and for the purpose of recompensing the state for the public expenditures incurred by reason of the operations of such vehicular units on the public highways [there]of."  Tax Law § 504 (5), however, exempts from such tax any vehicular unit "[u]sed exclusively in the transportation of household goods (as defined by the commissioner of transportation of this state or the interstate commerce commission) by a carrier under authority of the commissioner of transportation of this state or of the interstate commerce commission."

Prior to January 1, 1996, for purposes of regulation by the now defunct Interstate Commerce Commission (hereinafter ICC), federal law defined "household goods" as including — subject to certain enumerated exceptions — three distinct categories: "personal effects and property used or to be used in a dwelling when a part of the equipment or supply of such dwelling," "furniture, fixtures, equipment, and the property of stores, offices, museums, institutions, hospitals or other establishments when a part of the stock, equipment, or supply of such stores, offices, museums, institutions, hospitals, or other establishments" and "articles, including objects of art, displays, and exhibits, which because of their unusual nature or value require the specialized handling and equipment usually employed in moving household goods" (Household Goods Transportation Act of 1980, former 49 USC § 10102 [10] [A], [B], [C], as added by Pub L 96-454, 94 US Stat 2011).  In 1983, the Legislature adopted a definition of household goods that mirrored that previously promulgated by Congress (see Transportation Law § 2 [15] [a], [b], [c], as added by L 1983, ch 635, § 1) — an enactment designed to ensure compatibility with then-existing

federal law (see Mem of State Exec Dept, 1983 McKinney's Session Laws of NY at 2650). The state and federal definitions of household goods thereafter existed in harmony until Congress enacted the Interstate Commerce Commission Termination Act of 1995 (hereinafter ICCTA) (Pub L 104-88, 109 US Stat 803, eff Jan. 1, 1996), abolishing the ICC and, insofar as is relevant here, eliminating two of the three categories of household goods. Going forward, the federal definition of household goods included only "personal effects and property used or to be used in a dwelling, when a part of the equipment or supply of such dwelling, and similar property if the transportation of such effects or property is . . . arranged and paid for by the householder, including transportation of property from a factory or store when the property is purchased by the householder with the intent to use in his or her dwelling, or . . . arranged and paid for by another party" (former 49 USC § 13102 [10] [A], [B]),[1] thereby placing the federal definition of household goods at odds with that contained in Transportation Law § 2 (15) (b) and (c).

Following the enactment of the ICCTA, the then Commissioner of Transportation notified state-regulated carriers that federal law now preempted the Department of Transportation (hereinafter DOT) from including in its definition of household goods the items described in Transportation Law § 2 (15) (b) and (c) — commonly referred to as commercial shipments and shipments requiring the care and handling normally associated with the moving of household goods, respectively — and that, henceforth, the transportation of such goods would constitute the transportation of "property." The Commissioner's notice was accompanied by an administrative order to that effect but, in the years that followed, no effort was made to expressly repeal or amend Transportation Law § 2 (15) (b) or (c) to bring such provisions into accord with either federal law or the DOT's interpretation thereof.

---

[1] This definition of household goods was amended in minor respects by the Motor Carrier Safety Improvement Act of 1999 (Pub L 106-159, 113 US Stat 1748) (see 49 USC § 13102 [10] [A], [B]; 49 CFR 375.103).

In the context of the proceeding now before us, the Audit Division of the Department of Taxation and Finance audited petitioner's records for the period from August 1, 1998 to April 30, 2003 and, in the course thereof, consulted with DOT to ascertain the proper definition of household goods for purposes of the exemption set forth in Tax Law § 504 (5). DOT, in turn, held to the position that the ICCTA preempted Transportation Law § 2 (15) (b) and (c) and, therefore, only those items set forth in Transportation Law § 2 (15) (a) qualified as household goods. Based upon DOT's analysis, the Division concluded that petitioner had claimed certain exemptions from the highway use tax to which it was not entitled and issued notices of determination.[2]

During the relevant time period, petitioner utilized five commodity code definitions to describe the items it transported and to determine the taxability thereof for purposes of the highway use tax imposed under Tax Law § 503 (1). Ultimately, the Division and petitioner entered into a stipulation, wherein it was agreed that petitioner's commodity code 1 shipments qualified for the exemption set forth in Tax Law § 504 (5), while those shipments classified under commodity codes 4 and 5 did not so qualify. Accordingly, the dispute distilled to whether petitioner's shipments of items described in commodity codes 2 and 3 qualified for the household goods exemption.[3]

_____

[2] Two of the four notices of determination issued subsequently were withdrawn, leaving only those notices dated June 29, 2009 in contention.

[3] Petitioner's definition of commodity code 2 items essentially mirrored the definition of household goods set forth in Transportation Law § 2 (15) (b), while its definition of commodity code 3 items was in substantial accord with the definition of household goods contained in Transportation Law § 2 (15) (c). As acknowledged in the underlying stipulation, petitioner did on occasion – during the audit period – pay taxes on shipments of goods that bore commodity codes 2 and 3 and, hence, fell within the purview of Transportation Law § 2 (15) (b) and (c). As a result, the Division agreed to, among other things, waive all penalties associated with the notices of

Petitioner waived a hearing and agreed to have the dispute resolved upon documentary submissions. After an Administrative Law Judge upheld the notices of determination, petitioner filed exceptions — contending that it was entitled to the requested exemption. Respondent Tax Appeals Tribunal sustained the notices of determination, prompting petitioner to commence this proceeding pursuant to Tax Law § 2016 to challenge the Tribunal's determination.

> "It is well settled that [s]tatutes creating tax exemptions must be construed against the taxpayer, and the taxpayer, in turn, bears the burden of establishing that the requested exemption applies. To that end, it is not sufficient for the taxpayer to establish that its construction of the underlying statute is plausible; rather, the taxpayer must demonstrate that its interpretation of the statute . . . is the only reasonable construction" (Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 85 AD3d 1341, 1342 [2011], affd 19 NY3d 1058 [2012], cert denied ___ US ___, 134 S Ct 422 [2013] [internal quotation marks and citations omitted]; see Matter of Piccolo v New York State Tax Appeals Trib., 108 AD3d 107, 111-112 [2013]; Matter of Stevenson v New York State Tax Appeals Trib., 106 AD3d 1146, 1147 [2013]).

Based upon our review of the record, we cannot say that petitioner discharged that burden here. Accordingly, the Tribunal's determination is confirmed.

---

determination issued and, in the event that petitioner prevailed, to refund or credit any tax previously paid in connection with the contested commodity codes.

Initially, we reject petitioner's contention that it is entitled to the exemption set forth in Tax Law § 504 (5) so long as it is able to demonstrate that it transported household goods within the meaning of Transportation Law § 2 (15) – regardless of the impact of the ICCTA and the subsequent change in the definition of household goods under federal law. As noted previously, Tax Law § 504 (5) exempts from the highway use tax otherwise imposed any vehicular unit "[u]sed exclusively in the transportation of household goods (as defined by the commissioner of transportation of this state or the interstate commerce commission) by a carrier under authority of the commissioner of transportation of this state or of the interstate commerce commission." Once the ICC was abolished in 1996, petitioner's argument continues, the term household goods was – according to the plain language of Tax Law § 504 (5) – defined exclusively by reference to Transportation Law § 2 (15); therefore, petitioner's shipments bearing commodity codes 2 and 3, which generally correspond with the definition of household goods set forth in Transportation Law § 2 (15) (b) and (c), are entitled to the subject exemption.

The flaw in petitioner's argument on this point is twofold. First, petitioner overlooks the fact that, despite indeed being subject to certain DOT rules and regulations governing, among other things, safety issues (see 49 USC § 14501 [a] [2]; [c] [2] [A]), petitioner remains a federally registered interstate motor carrier and, with respect to the transportation of household goods, is subject to the provisions of the Motor Carrier Safety Improvement Act of 1999 (see 49 USC § 13102 [10] [A], [B]). Hence, petitioner cannot ignore the applicable federal regulatory scheme and statutes simply because it perceives state law to afford more advantageous tax benefits. More to the point, we are of the view that the definition of household goods set forth in Transportation Law § 2 (15) (b) and (c) has been preempted by and, hence, must yield to the definition set forth in 49 USC § 13102 (10) (A) and (B).[4]

_____

[4] Rather than directly analyzing whether the relevant provisions of the Transportation Law had been preempted by federal legislation, the Tribunal elected to defer to DOT's

> "The federal preemption doctrine has
> its roots in the Supremacy Clause of the
> United States Constitution, . . . [and]
> [f]ederal preemption of state laws
> generally can occur in three ways: where
> Congress has expressly preempted state
> law, where Congress has legislated so
> comprehensively that federal law occupies
> an entire field of regulation and leaves
> no room for state law, or where federal
> law conflicts with state law" (Sharabani v
> Simon Prop. Group, Inc., 96 AD3d 24, 27-28
> [2012] [internal quotation marks and
> citations omitted]; see People v Miran,
> 107 AD3d 28, 36 [2013], lv denied 21 NY3d
> 1044 [2013], cert denied ___ US ___, 134 S
> Ct 2312 [2014]; Biscone v JetBlue Airways
> Corp., 103 AD3d 158, 165-166 [2012],
> appeal dismissed 20 NY3d 1084 [2013]).

Without belaboring the point, we agree with petitioner that
Congress has neither expressly preempted the relevant provisions
of Transportation Law § 2 (15) nor evidenced an intent to

_____

resolution of that issue, ultimately finding that "the
Commissioner['s] . . . determination that the Transportation Law
definition of 'household goods' was preempted by the ICCTA
definition appears reasonable under the circumstances." Although
the Tribunal's determination and, more particularly, its analysis
of the parties' competing preemption arguments could have been
drafted with greater clarity, it nonetheless is apparent that the
denial of the requested tax exemption was grounded in the belief
that petitioner, as an interstate motor carrier, was bound by the
federal definition of household goods and, in this regard, should
have been well aware of the "significant [federal] legislation"
in which such preemption "manifested itself." As the Tribunal's
determination — although inartfully expressed — ultimately hinged
upon whether Transportation Law § 2 (15) (b) and (c) indeed has
been preempted by federal law, we now turn our attention to this
issue.

exclusively regulate the transportation of household goods in all instances, thereby precluding any state regulation with respect thereto.[5]  That said, we nonetheless are persuaded that this matter presents an instance of conflict preemption, which occurs when "compliance with both federal and state [law] is a physical impossibility," or where the state law at issue — here, Transportation Law § 2 (15) and its corresponding impact upon the availability of the exemption set forth in Tax Law § 504 (5) — "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (Sharabani v Simon Prop. Group, Inc., 96 AD3d at 28 [internal quotation marks and citations omitted]; see Doomes v Best Tr. Corp., 17 NY3d 594, 603 [2011]; Biscone v JetBlue Airways Corp., 103 AD3d at 165-166).

Simply put, the federal and state definitions of household goods stand in direct conflict with one another and, consistent with the doctrine of conflict preemption, the more expansive definition of household goods set forth in Transportation Law § 2 (15) (b) and (c) must yield to its more restrictive federal counterpart.  To hold otherwise would frustrate Congress' long-standing regulation of this particular aspect of interstate commerce.  Accordingly, in order to avail itself of the exemption embodied in Tax Law § 504 (5), petitioner — as a federally registered motor carrier engaged in the interstate transport of household goods — must demonstrate that its shipments qualify as household goods within the meaning of 49 USC § 13102 (10) (A) and (B).  As petitioner failed to make such a showing here, the Tribunal properly concluded that the contested shipments bearing commodity codes 2 and 3 were not exempt from the highway use tax imposed by Tax Law § 503 (1).  Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Stein, J.P., McCarthy, Lynch and Clark, JJ., concur.

---

[5]  Indeed, such a conclusion would be contrary to the provisions of 49 USC § 14501 (c) (2) (B), which expressly permits state regulation of the intrastate transport of household goods.

ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

ENTER:

Robert D. Mayberger
Clerk of the Court