OPINION OF THE COURT
Smith, J.
The issue in this case is whether the Tax Appeals Tribunal erred when it determined that a proposed merger agreement, requiring shareholder approval, failed to become a binding and enforceable contract for the purposes of a real property gains tax exemption pursuant to Tax Law § 1443 (6). We agree with the Appellate Division that the Tax Appeals Tribunal’s decision was rational and supported by evidence in the record.
United National Corporation (UNC) was a publicly held corporation formed in Delaware, with headquarters in New *47 York City. Essentially a real estate holding corporation, UNC owned substantial real property in 11 States. In September 1982, the trustees of the Buffalo Savings Bank (later "Goldome Bank for Savings”, referred to herein as "petitioner”) decided to take "any and all actions necessary” to acquire UNO’s business and executed an instrument entitled "Agreement and Plan of Merger” on January 21, 1983, amended on February 18, 1983, proposing that UNC merge with a wholly owned subsidiary of petitioner Goldome. Article VI of the agreement, entitled "Shareholder Approval, Registration of New Preferred Shares, and Listing Thereof,” provides:
"(a) The parties hereto acknowledge and understand that as a condition precedent to the Merger and under the General Corporation Law of the State of Delaware, the approval of shareholders of UNC must be obtained and UNC shall, as expeditiously as possible, call a meeting of its shareholders for such purpose and solicit proxies to vote in favor of such Merger” (§ 6.1 [a]).
Article VIII of the agreement sets forth "Conditions” of the "Closing and Merger.” Section 8.1 (a) of article VIII states "[t]he satisfaction of * * * the following * * * shall be conditions precedent to the obligation of each of the parties hereto to consummate the Merger: (a) the requisite consent or approval of the shareholders of UNC shall have been obtained.” Delaware law, moreover, requires that any agreement to merge "shall be submitted to the stockholders of each constituent corporation at an annual or special meeting for the purpose of acting on the agreement” (Del Code Annot, tit 8, § 251 [c]).
The critical New York statute applicable here is Tax Law § 1443 (6), effective March 28, 1983, which provides, in part:
"A total or partial exemption shall be allowed in the following cases:
"Where a transfer of real property occurring after the effective date of this article is pursuant to a written contract entered into on or before the effective date of this article, provided that the date of execution of such contract is confirmed by independent evidence, such as recording of the contract, payment of a deposit or other facts and circumstances as determined by the tax commission.”
*48 This statute provides an exemption from real property transfer gains taxes imposed under Tax Law § 1441 for "gains derived from the transfer of real property within the state.” Petitioner, construing the "Agreement and Plan of Merger” executed on January 21, 1983 as a "contract” entered into "on or before the effective date” of section 1443 (6), sought exemption from the section 1441 gains tax, notwithstanding the shareholders’ approval of the agreement on May 13, 1983, approximately six weeks after the effective date of the statute. Because petitioner did not receive the exemption, it filed exceptions to the tax department’s determination.
The Administrative Law Judge (ALJ) agreed with petitioner, granting it the tax exemption on the grounds that the parties had entered into a binding and enforceable contract prior to the effective date of Tax Law § 1443 (6) notwithstanding the lack of shareholder consent.
Respondent Commissioner filed exceptions to the ALJ’s determination and the Tax Appeals Tribunal reversed the determination of the ALJ. That Tribunal held that petitioner failed to demonstrate clear entitlement to the Tax Law § 1443 (6) exemption noting that transfer of UNC’s property "was expressly conditioned upon and subject to shareholder approval.”
Pursuant to Tax Law § 2016 (delineating judicial review procedures for determinations of the Tax Appeals Tribunal), petitioner then commenced this CPLR article 78 proceeding at the Appellate Division, seeking to review the Tribunal’s determination. The Appellate Division confirmed that determination, agreeing that shareholder approval was required before a contract could exist. That Court held that the Tribunal’s determination was rational and noted that absent a contract, "there could be no exemption from the gains tax” (189 AD2d 39, 42). Two Appellate Division Justices dissented on a question of law. Petitioner appealed, as of right, to this Court pursuant to CPLR 5601 (a).
Petitioner contends that the written contract was "entered into” on or before March 28, 1983, thus entitling it to the exemption from the property gains tax. Respondent argues that the exemption under Tax Law § 1443 (6) does not apply to petitioner because the contract for the transfer of the interest in real property was not "entered into” until May 13, 1983, when the UNC shareholders approved the transaction.
Initially, our review in this case is limited to whether the *49 Tax Appeals Tribunal’s determination is "clearly erroneous” or "irrational” (see, Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 173; Matter of Grace v New York State Tax Commn., 37 NY2d 193, 195-196). "If there are any facts or reasonable inferences from the facts to sustain it, the court must confirm the Tax Commission’s determination” (id., at 195; see also, Hawkins, Delafield & Wood v Michael, 67 NY2d 873, 875). The Tribunal’s determination that no binding contract existed between UNC and petitioner prior to the effective date of Tax Law § 1443 is supported by article VI, § 6.1 (a) and article VIII, § 8.1 (a) of the agreement both conditioning the merger proposal upon approval by UNC shareholders. The Tribunal’s conclusion that the parties would not be bound by the agreement without the shareholders’ approval is therefore rational. Based upon the parties’ agreement, we cannot hold, as a matter of law, that the Tribunal’s determination was arbitrary or capricious.
Additionally, petitioner bears the burden of establishing entitlement to the exemption. Statutes creating tax exemptions "must be construed against the taxpayer” (Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 NY2d 166, 172-173, supra). The taxpayer must show "that its interpretation of the statute is * * * the only reasonable construction” (id., at 173). Although petitioner here puts forth an alternative interpretation of the statute, its interpretation is by no means the "only reasonable construction.”
Consistent with the Tribunal’s determination, Tax Law § 1443 (6) requires "that the date of execution” of the contract be "confirmed by independent evidence, such as recording of the contract [or] payment of a deposit or other facts and circumstances as determined by the tax commission.” The application of the section 1443 (6) exemption is explained in 20 NYCRR 590.20. That regulation, while indicating that the State Tax Commission’s discretion in determining what constitutes "independent evidence” is to be guided by the two examples specified in the statute, nonetheless recognizes that the Commission itself decides what types of independent evidence are acceptable. Here, the Tribunal appropriately assessed the evidence and determined, based on the express intent of the parties, that the proposal would not become a binding contract until shareholder approval was procured.
Petitioner contends that even if the merger was subject to the gains tax, it should not be liable for the tax. At the time *50 petitioner entered the agreement, Tax Law § 1447 (3) (a) stated, in part, "For failure to comply with the provisions of this subdivision, the transferee * * * shall be personally liable for the payment to the state of any such taxes stated in such tentative assessment to be due to the state from the transferor.” The "tentative assessment” is generally issued by respondent pursuant to its "pre-transfer audit procedure” under Tax Law § 1447 (2). That audit procedure is set in motion by petitioner’s submission of "affidavits and any other information necessary to determine [the] tentative assessment” required to be filed at least 20 days prior to the transfer (id.). Here, the "other information” consists of the questionnaires petitioner submitted in 1985 concerning the merger. Petitioner’s position, that because no pretransfer "questionnaires” had been filed, no assessment can be made under section 1447 (2), is supported to some extent by the Legislative Proposal Letter (dated Dec. 1, 1983) from the Department of Taxation and Finance. The letter indicates that where questionnaires have not been filed, "no provision for transferee liability” existed.
Respondent recognized this and convinced the Legislature to amend section 1447 (3) (a) to hold the transferee liable for the taxes due where the transferee fails to file the required questionnaire or supplies "willfully false or fraudulent information.” Petitioner, who failed to timely file the questionnaires in 1983, may not, however, use its own dilatoriness to avoid the reach of the statute. Moreover, petitioner’s liability under the questionnaires it filed in 1985, and the tentative assessment generated in response to them, is unaltered by the amendment (see, Tax Law § 1447 [3] [a]).
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., Bellacosa and Levine concur.
Judgment affirmed, with costs.