■ In the Matter of Astoria Financial Corporation, Petitioner, v Tax Appeals Tribunal of State of New York et al., Respondents. [880 NYS2d 389]—

Mercure, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a deter-

mination of respondent Tax Appeals Tribunal which, among other things, sustained a notice of deficiency.

Petitioner, a bank located in the Village of Lake Success, Nassau County, claimed an investment tax credit in the amount of $701,785 on its 1999 banking corporation franchise tax return in connection with a building that it purchased and used exclusively for its mortgage banking operations. These operations consisted of originating, purchasing, selling and terminating mortgage loans. Following an audit, the Division of Taxation disallowed the investment tax credit in its entirety and issued a notice of deficiency assessing additional tax and surcharges in the amount of $820,086, plus interest.[1] The Division concluded that while petitioner's activities in buying and selling mortgage loans qualified it as a "broker or dealer" of securities within the meaning of Tax Law § 1456 (i) (2), petitioner did not prove that the building was principally used for these qualifying dealer activities, as opposed to the origination and termination of mortgages.

Thereafter, a hearing was held before an Administrative Law Judge (hereinafter ALJ), who determined that petitioner cannot be deemed a dealer with respect to the mortgage loans that it originates but does not sell or the loans that it terminates via foreclosure, payoff or write off. The ALJ further concluded that inasmuch as over 50% of the income generated in the building was derived through these nonqualifying activities, petitioner was not entitled to the investment tax credit. Upon petitioner's appeal, respondent Tax Appeals Tribunal affirmed in relevant part. Petitioner then commenced this proceeding seeking review of the Tribunal's determination.

We confirm. The dispute herein centers on whether the property at issue is principally used in the ordinary course of petitioner's business as a dealer in connection with the "purchase or sale" of securities. As relevant here, Tax Law § 1456 (i) (2) (A) provides for a credit with respect to certain tangible property, including buildings that are, among other things, "principally used in the ordinary course of the taxpayer's trade or business as a broker or dealer in connection with the purchase or sale (which shall include but not be limited to the issuance, entering into, assumption, offset, assignment, termination, or transfer) of . . . securities as defined in" Internal Revenue Code (26 USC) § 475 (c) (2). Respondent Commissioner of

---

1. Petitioner thereafter filed an amended 1999 tax return claiming an additional credit for building improvements; the parties have stipulated that this additional refund claim in the amount of $330,206 remains in dispute along with the assessed deficiency.

Taxation and Finance concedes that a mortgage loan is "evidence of indebtedness" that is a "security" within the meaning of the statute, but determined that petitioner's activities in creating and servicing mortgage loans that it holds to conclusion—i.e., until payoff, foreclosure or charge off—do not constitute the business of a securities broker or dealer within the scope of Tax Law § 1456 (i) (2) (A). Petitioner, in turn, asserts that the origination of mortgage loans—that is, creating a mortgage loan by attracting and lending to a borrower—constitutes a "purchase" of securities under the statute, and that it need not sell the loans in order to qualify for the credit.

Initially, it is well settled that when the question before us is not one of pure statutory reading and analysis but a matter that falls within an agency's expertise, "the construction given statutes and regulations by an agency responsible for their administration will, if not irrational or unreasonable, be upheld" (*Matter of Mobil Intl. Fin. Corp. v New York State Tax Commn.*, 117 AD2d 103, 106 [1986]; *see Matter of Emigrant Bancorp, Inc. v Commissioner of Taxation & Fin.*, 59 AD3d 30, 32 [2008]; *Matter of Muraskin v Tax Appeals Trib.*, 213 AD2d 91, 94 [1995], *lv denied* 87 NY2d 806 [1996]; *Matter of General Mills Rest. Group v Chu*, 125 AD2d 762, 763 [1986]). Moreover, "[t]o prevail over [the Tribunal's] construction of the statute, petitioner must demonstrate that . . . its own [reading] is the only reasonable construction" of the statute (*Matter of Brooklyn Navy Yard Cogeneration Partners, L.P. v Tax Appeals Trib. of State of N.Y.*, 46 AD3d 1247, 1248 [2007], *lv denied* 10 NY3d 706 [2008]; *Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d 44, 49 [1993]; *Matter of Emigrant Bancorp, Inc. v Commissioner of Taxation & Fin.*, 59 AD3d at 32; *Matter of Gropper v Tax Appeals Trib. of State of N.Y.*, 9 AD3d 796, 798 [2004]). Ultimately, the "issue is whether the Tribunal's determination has a rational basis," not whether petitioner's alternative interpretation of the statute is reasonable (*Matter of Muraskin v Tax Appeals Trib.*, 213 AD2d at 94; *Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d at 48-49; *Matter of CBS Corp. v Tax Appeals Trib. of State of N.Y.*, 56 AD3d 908, 909 [2008], *lv denied* 12 NY3d 703 [2009]).

In our view, it cannot be said that the Tribunal acted irrationally in determining that mortgage origination is not the "purchase" of a security within the meaning of Tax Law § 1456 (i) (2) (A). As the Commissioner contends, the creation of a mortgage—lending money to a borrower who secures that promise with a mortgage on real property—is distinct from

purchasing a mortgage by paying the purchase price to the seller. Moreover, the Commissioner properly notes that section 1456 (i) (2) itself draws a distinction between the "origination" and "purchase" of a security. While the provision at issue, clause (A), does not refer to origination, clause (B) permits a separate tax credit for buildings principally used in a taxpayer's business providing *"loan origination services* to customers in connection with the *purchase* . . . of securities" (Tax Law § 1456 [i] [2] [B] [emphasis added]). Inasmuch as all provisions of a statute must be read and construed together, and words within a provision are not to be rejected as superfluous when they may instead be given a distinct and separate meaning (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 231; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95, 104 [2001]), the Tribunal properly distinguished between the terms "purchase" and "origination" in determining that mortgage origination is not a credit-eligible activity under section 1456 (i) (2) (A).

Furthermore, we reject petitioner's argument that Tax Law § 1456 (i) (2) (A) must be read in conformity with Internal Revenue Code (26 USC) § 475 (c) (1). Pursuant to the doctrine of federal conformity, " 'courts [should] adopt, whenever reasonable and practical, the [f]ederal construction of substantially similar tax provisions,' " particularly where "the state statute is modeled on [the] federal law" (*Matter of Delese v Tax Appeals Trib. of State of N.Y.*, 3 AD3d 612, 613 [2004], *appeal dismissed* 2 NY3d 793 [2004], quoting *Matter of Marx v Bragalini*, 6 NY2d 322, 333 [1959]). Here, the state statute incorporates by reference the definition of "security" found in Internal Revenue Code (26 USC) § 475 (c) (2) and, in defining "purchase or sale," uses language similar to that in a portion of the federal provision's definition of "dealer in securities" (*compare* Tax Law § 1456 [i] [2] [A] *with* 26 USC § 475 [c] [1] [B]). Nevertheless, the federal and state provisions are not substantially similar because the purpose of the federal statute is simply to define which entities must comply with "mark to market" accounting rules—it does not address the provision of investment tax credits, the purpose of Tax Law § 1456 (i) (2) (A). Inasmuch as petitioner has failed to demonstrate any substantive relation between the tax credit provided in the state statute and the mark-to-market accounting rules set forth in the federal provision, it has not demonstrated that its interpretation of section 1456 (i) (2) (A)—which is based wholly on its reading of the federal provision—is the only reasonable construction (*see Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d at 49; *Matter of Brooklyn Navy Yard Cogeneration Partners, L.P. v Tax Appeals Trib. of State of N.Y.*, 46 AD3d

at 1248; *Matter of Gropper v Tax Appeals Trib. of State of N.Y.*, 9 AD3d at 797-798).[2]

Finally, contrary to petitioner's argument, when its mortgage origination operations are excluded, the ratio of qualifying activities to total activities—which petitioner then applies to usable floor space in the building to determine its principal use (*see* 20 NYCRR 5-2.4 [c]; *see also Matter of Reader's Digest Assn. v State Tax Commn.*, 103 AD2d 926, 926 [1984])—is less than the 50% required to be considered a principal use. Assuming without deciding that loan termination constitutes a qualifying activity, such activities would be petitioner's loan purchasing, selling and termination. Using the figures that petitioner provides, the loan amounts associated with these qualifying activities total $2,861,655,000. This figure added to $3,338,905,000, the value of loans originated, yields the amount associated with petitioner's total activities, $6,200,560,000. The ratio of qualifying activities to total activities is, thus, $2,861,655,000 divided by $6,200,560,000, or 46%—which is below the 50% threshold that is concededly required.[3] In short, given the absence of any evidence of actual use of the building, petitioner has failed to meet its burden of proving that it is entitled to the investment tax credit (*see Matter of General Mills Rest. Group v Chu*, 125 AD2d at 763), and the Tribunal's determination must be confirmed.

Petitioner's remaining argument has been considered and found to be lacking in merit.

Rose, Malone Jr., Stein and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

**2.** We further note that although treasury regulations promulgated pursuant to the federal provision state that loan origination is the "purchase" of a security (26 CFR 1.475 [c]-1 [c] [1] [i]), mortgages that are originated and held to maturity, rather than held for sale, are *not* subject to mark-to-market rules (26 USC § 475 [b] [1] [B]).

**3.** While petitioner deducts an additional $120,636,000 in "commercial loans" from the amount of its total activities, it has not explained what these commercial loans are. In any event, even if we were to deduct this amount, the resulting ratio is 47%, which remains lower than the necessary threshold.