Lahtinen, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which, among other things, denied petitioners’ application for a refund of an investment tax credit under Tax Law article 9-A.
Petitioners are regulated public utilities engaged in the business of providing natural gas to customers in New York City and Long Island. Starting in 2000, petitioners were subject to a corporate franchise tax pursuant to Tax Law article 9-A and, unlike Tax Law article 9 under which they had been previously taxed, article 9-A permits an investment tax credit (hereinafter ITC) for property that meets various criteria including, as relevant here, that the property is “principally used by the taxpayer in the production of goods by manufacturing [or] processing” (Tax Law § 210 [12] [b] [i]). Petitioners sought an ITC for the tax years 2000 to 2006 for their integrated system (or components thereof), contending that their system was principally used to process natural gas from an unstable state in which it arrived from their suppliers to a safe and usable product for their customers. Following a hearing, an Administrative Law Judge and, later, respondent Tax Appeals Tribunal found that petitioners were not entitled to an ITC.
The Tribunal determined, among other things, that petitioners had failed to meet their burden of proof in that the evidence established that petitioners’ equipment was principally used to distribute and deliver natural gas, and not to produce a product by manufacturing or processing as those terms are construed for purposes of an ITC. This proceeding ensued with petitioners contending, first, that their entire integrated system (i.e., regulators, scrubbers, heaters, odorizers, pipes, mains and other equipment) qualified for an ITC as manufacturing or processing natural gas, and, alternatively, that each of four individual assets of that system (i.e., regulators, heaters, scrubbers and odorizers) qualified separately for an ITC.
For purposes of an ITC under Tax Law article 9-A, “manufacturing” means “the process of working raw materials into wares *1081 suitable for use or which gives new shapes, new quality or new combinations to matter which already has gone through some artificial process by the use of machinery . . . and other similar equipment” (Tax Law § 210 [12] [b] [ii] [A]; see 20 NYCRR 5-2.4 [a]), and we have previously upheld the Tribunal’s position that “ ‘processing’ speaks to an industrial activity related to manufacturing” (Matter of General Mills Rest. Group v Chu, 125 AD2d 762, 764 [1986]). Precedent supports the assertion of respondent Commissioner of Taxation and Finance that the Tribunal’s interpretation and application of the provisions providing for an ITC are accorded deference and will be upheld if reasonable (see id. at 763; see also Matter of Astoria Fin. Corp. v Tax Appeals Trib. of State of N.Y., 63 AD3d 1316, 1318 [2009]; Matter of Gropper v Tax Appeals Trib. of State of N.Y., 9 AD3d 796, 798 [2004]; Matter of Leisure Vue v Commissioner of Taxation & Fin., 172 AD2d 872, 872 [1991]). “Ultimately, the ‘issue is whether the Tribunal’s determination has a rational basis,’ not whether petitioner[s’] alternative interpretation of the statute is reasonable” (Matter of Astoria Fin. Corp. v Tax Appeals Trib. of State of N.Y., 63 AD3d at 1318, quoting Matter of Muraskin v Tax Appeals Trib., 213 AD2d 91, 94 [1995], lv denied 87 NY2d 806 [1996]; see Matter of CS Integrated, LLC v Tax Appeals Trib. of State of N.Y., 19 AD3d 886, 889 [2005]).
During the pertinent time, petitioners reportedly had 1.9 million customers and owned and maintained 11,000 miles of pipes and related equipment to provide usable natural gas to those customers. The natural gas came through the interstate pipeline system to eight delivery points known as city gates. Prior to arrival at petitioners’ city gates and after being extracted from wells, petitioners’ suppliers had purified, pressurized and odorized the natural gas for transport through the interstate pipeline system. Because the natural gas is received from the interstate pipeline at high pressures, petitioners have to depressurize it and, since this causes it to lose heat becoming so cold that it could damage petitioners’ pipes and mains, the gas must also be heated. Petitioners filter or “scrub” the gas to eliminate remaining impurities and add further odorant since New York requires a higher level than is mandated by the federal standards for the interstate line.
The record amply supports, for purposes of our limited review, the Tribunal’s determination that petitioners’ integrated system was primarily one of distribution and delivery rather than processing or manufacturing. The vast majority of petitioners’ 11,000-mile system, both in terms of size and cost, is comprised of pipes and mains through which natural gas flows. No mate *1082 rial change occurs to the natural gas while in the pipes and mains, as these serve as the primary means for delivering the product. Viewing the system as a whole, the modifications made by petitioners to the gas — while important — do not result in a significant change in the product.
Although the issue is closer regarding the individual component parts, nonetheless it was not unreasonable or irrational for the Tribunal to find that petitioners were not entitled to an ITC credit for the individual component parts of regulators, heaters, scrubbers and odorant skids. The pressurizing of the product relates to its transportation or movement, as higher levels were used through the interstate system and lower levels for delivery to customers. The changing and monitoring of the pressure by the regulators, together with the concomitant need to heat the gas when depressurizing, did not change its nature. The Tribunal reasonably found that these implicated adjustments were made to counteract changes caused by the storage and transportation of gas and not alteration that significantly changed it from how it was received.
With regard to scrubbing and odorizing, such procedures began shortly after the raw product was extracted from wells. The gas arrived at the city gates having already been subjected to scrubbing and odorizing. Additional scrubbing and odorizing continued once petitioners took control of the gas, but quantifying or otherwise establishing the amount of change resulting therefrom is not clear in the record. The Tribunal determined that petitioners failed to sufficiently prove that the natural gas was significantly different as a result of their scrubbing and odorizing from what had been received at the city gates. The proof provides support for this determination and, accordingly, we will not disturb it. Petitioners’ remaining argument is academic.
Peters, P.J., Stein and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.