*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   July 16, 2015                    519639
_____

In the Matter of CONSTELLATION
    NUCLEAR POWER PLANTS LLC,
                    Petitioner,
         v                                    OPINION AND JUDGMENT

TAX APPEALS TRIBUNAL OF THE
    STATE OF NEW YORK et al.,
                    Respondents.
_____

Calendar Date:   June 2, 2015

Before:   Peters, P.J., Lahtinen, Garry and Lynch, JJ.

_____

Hodgson Russ, LLP, Buffalo (Christopher L. Doyle of counsel), for petitioner.

Eric T. Schneiderman, Attorney General, Albany (Kathleen M. Arnold of counsel), for Commissioner of Taxation and Finance, respondent.

_____

Garry, J.

Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which, among other things, denied petitioner's application for a refund of investment tax credits under Tax Law article 9-A.

Petitioner is the owner and operator of the Nine Mile Point Nuclear Power Station (hereinafter Nine Mile) in the Town of Scriba, Oswego County, and the R.E. Ginna Nuclear Power Station (hereinafter Ginna) in the Town of Ontario, Wayne County.  Both Nine Mile and Ginna use nuclear fission to generate electricity,

but the two plants employ different processes to do so.[1]  Nine Mile has two units, both of which are boiling water reactors.  In these facilities, water — known as feedwater — is pumped into a reactor vessel mounted inside a containment structure, where nuclear fission generates heat that causes the feedwater to boil, creating steam.  Pressure forces the steam out of the vessel and through a steam line into a separate turbine building, where the steam causes a turbine to spin, generating electricity.  The steam then enters a condenser where it is cooled and condensed into water, which is then pumped into the reactor vessel as feedwater, to be converted again into steam.  The water never leaves the system as the cycle of conversion from water to steam and back again repeats itself.[2]

The Ginna power plant is a pressurized water reactor in which feedwater and steam do not pass directly through the reactor vessel.  Instead, the feedwater enters a steam generator, where it is heated by exposure to water that has been superheated by passing through the reactor vessel at a pressure too high to boil.  The pressurized water is never mixed with the feedwater or steam, but remains in a separate system where it is cooled and then returned to the reactor to repeat the heating cycle.  Meanwhile, the heated feedwater is converted to steam and forced by pressure out of the generator to the turbine building, where it spins the turbine, generates electricity and enters a condenser to be converted back to water that is fed into the steam generator.  As at Nine Mile, the steam and water never leave the system while the cycle is repeated.[3]

_____

[1]  The parties stipulated to the relevant facts.

[2]  When a turbine is shut down, a bypass line allows the steam to enter a condenser without passing through the turbine.  During the years at issue here, this occurred about 1.4% of the time in one of Nine Mile's reactors, and .5% of the time in the other reactor.

[3]  When the turbine at Ginna is shut down — which occurred roughly 1% of the time — a bypass line allows the steam to enter a condenser directly without generating electricity.

Beginning in 2005, petitioner filed timely claims for certain investment tax credits and industrial manufacturing business credits (hereinafter collectively referred to as manufacturing tax credits)[4] for the years 2001 through 2005, alleging that the assets used at both facilities to convert water to steam and steam to water were "principally used by [petitioner] in the production of goods by manufacturing [or] processing" (Tax Law former § 210 [12] [b] [i] [A]).[5] Petitioner also filed claims for certain other investment tax credits (hereinafter pollution tax credits), alleging that specific assets at Nine Mile and Ginna were used in the treatment of industrial waste and air pollution control (see Tax Law former § 210 [12] [b] [i] [B]). Finally, petitioner filed claims for employment incentive credits that were available to taxpayers who were, among other things, eligible for the foregoing tax credits (see Tax Law former § 210 [12-D]). In March 2007, the Division of Taxation and Finance denied petitioner's claims. After the Bureau of Conciliation and Mediation Facilities sustained the denial, petitioner filed a petition with the Division of Tax Appeals. In April 2013, an Administrative Law Judge (hereinafter ALJ) sustained the denial and denied the petition.

Thereafter, petitioner submitted a notice of exception to the ALJ's determination to respondent Tax Appeals Tribunal. In June 2014, the Tribunal affirmed the ALJ's determination, finding, among other things, that the assets utilized in the steam conversion cycle were not eligible for the manufacturing tax credits because they were not used in the production of goods by manufacturing or processing, and that the assets claimed to be

_____

[4] The industrial manufacturing business credits are available under a different statutory provision from the investment tax credits (see Tax Law former §§ 210 [12] [b] [i] [A]; [26-a]). The two categories of credits are treated together here because the parties agree that petitioner's eligibility for the industrial manufacturing business credits depends solely on whether it is eligible for the investment tax credits.

[5] Tax Law former § 210 was repealed effective January 1, 2015; the pertinent provisions are now found at Tax Law § 210-B.

air pollution control and waste treatment facilities were not eligible for the pollution tax credits because petitioner had failed to obtain required certifications from the Department of Environmental Conservation (hereinafter DEC) (see Tax Law former § 210 [12] [b] [iii]).  Petitioner then commenced this CPLR article 78 proceeding seeking review of the Tribunal's determination (see Tax Law § 2016).

Petitioner first contends that the Tribunal erred in determining that its assets are not eligible for the manufacturing tax credits.  This Court defers to the Tribunal's construction and application of statutory provisions pertaining to investment tax credits and will uphold the Tribunal's determination if it is supported by a rational basis (see Matter of Brooklyn Union Gas Co. v New York State Tax Appeals Trib., 107 AD3d 1080, 1081 [2013]).  Exemptions from taxation such as tax credits "[are] not a matter of right, but [are] allowed only as a matter of legislative grace" (Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196 [1975]; accord Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d 1058, 1060 [2012], cert denied ___ US ___, 134 S Ct 422 [2013]).  As such, statutes that create tax credits are construed against the taxpayer, and, in addition to establishing its entitlement to the credits, the taxpayer must also "demonstrate that its own reading is the only reasonable construction of the statute" (Matter of Astoria Fin. Corp. v Tax Appeals Trib. of State of N.Y., 63 AD3d 1316, 1318 [2009] [internal quotation marks, brackets, ellipsis and citations omitted]; see Matter of We Care Transp. v Tax Appeals Trib. of State of N.Y., 298 AD2d 717, 719 [2002]).

Petitioner contends that it is eligible for manufacturing tax credits because the assets in the Nine Mile and Ginna facilities are principally used to manufacture or process goods in the form of steam and water (see Tax Law former § 210 [12] [b] [i] [A]).[6]  For this purpose, the term "goods" is defined as "tangible movable personal property having intrinsic value" (Matter of Leisure Vue v Commissioner of Taxation & Fin., 172

_____

[6]  The parties stipulated that petitioner satisfies the other statutory requirements for the manufacturing tax credits.

AD2d 872, 873 [1991] [internal quotation marks and citation omitted]).  The statute specifically provides that the "the term 'goods' shall not include electricity" (Tax Law former § 210 [12] [b] [i]).  Although petitioner concedes that the Nine Mile and Ginna plants produce electricity and that electricity is the only product that petitioner sells, it nevertheless asserts that its claim satisfies the statutory requirements because it does not seek manufacturing tax credits for turbines, generators or other equipment directly used to produce electricity.  Instead, it seeks the credits for assets such as the containment structures, reactor vessels, nuclear fuel and fuel assemblies, steam generators and condensers that are continuously engaged — even when the turbines are shut down and no electricity is being produced — in producing steam from water and in converting the steam back to water again.

In petitioner's view, the Tribunal erred in analyzing the disputed assets as part of a larger system that generates electricity as an end product.  Instead, petitioner contends that the Tribunal was required by this Court's precedent to consider the function of each claimed asset separately, and that when the assets are thus analyzed in isolation, they are eligible for manufacturing tax credits because each of them produces steam or water.  We reject this contention.  Our decision in Matter of Brooklyn Union Gas Co. v New York State Tax Appeals Trib. (107 AD3d 1080 [2013], supra) did not, as petitioner contends, mandate an asset-by-asset approach or any other specific form of inquiry as the prescribed method by which the Tribunal must determine eligibility for investment tax credits.  Instead, this Court found that the record supported the Tribunal's determination that a taxpayer's integrated gas delivery system, considered as a whole, was principally used for the distribution and delivery of natural gas rather than for processing the gas to make it suitable for consumer use (id. at 1081-1082).  We further found record support for the Tribunal's alternate determination that certain component parts of the gas delivery system that performed actions such as adding odorants to the gas, considered individually, were not used for manufacturing or processing (id. at 1082).  Significantly, the purpose of this individualized assessment was to determine whether these assets were used for the separate purpose of manufacturing rather than distribution;

the Tribunal analyzed the assets in terms of their relationship
to the overall system and found that they were not used for
manufacturing because they did not significantly change the
nature of the gas (id.).

Here, by contrast, all of the disputed assets are necessary
to the power plants' ultimate purpose of producing electricity,
and the separate components create water and steam only to serve
that purpose.  The Tribunal found that the power plants utilized
"unified, integrated processes that harnessed the energy from
nuclear fission and produced electricity," that "it is
inappropriate to artificially divide a unitary process when the
facts show that the parts and steps operate interdependently and
indivisibly in accomplishing a singular task," and thus, that the
claimed assets were principally used in the production of
electricity rather than water or steam.  The record supports this
assessment, and we find nothing irrational in the Tribunal's
analysis of the facts or its interpretation of the governing
statute (compare Matter of Niagara Mohawk Power Corp. v
Wanamaker, 286 App Div 446, 449 [1955], affd 2 NY2d 764 [1956]).

Moreover, even when the claimed assets are analyzed in
isolation, there is a rational basis for the Tribunal's
determination that they were not engaged in manufacturing or
processing.  Manufacturing is defined as "the process of working
raw materials into wares suitable for use or which gives new
shapes, new quality or new combinations to matter which already
has gone through some artificial process by the use of machinery
. . . and other similar equipment" (Tax Law former § 210 [12] [b]
[ii] [A]), and "'processing' speaks to an industrial activity
related to manufacturing" (Matter of General Mills Rest. Group v
Chu, 125 AD2d 762, 764 [1986]; accord Matter of Brooklyn Union
Gas Co. v New York State Tax Appeals Trib., 107 AD3d at 1081).
Here, the water that is converted to steam by petitioner's assets
is then converted back to its original form as water and then to
steam again in an ongoing, continuous cycle that makes no
permanent change in the water and yields no final product.  This
is more akin to recycling than to manufacturing.  On these facts,
we cannot find it irrational for the Tribunal to conclude that
the claimed assets were not principally engaged in producing any
tangible property other than electricity (see Matter of Brooklyn

Union Gas Co. v New York State Tax Appeals Trib., 107 AD3d at 1082; compare People v Knickerbocker Ice Co., 99 NY 181, 183-185 [1885]; Matter of Plattekill Mountain Ski Ctr., Inc., NY St Dept of Taxation & Fin Advisory Op No. TSB-H-85[28]C, *2 [1984]). Petitioner has neither established that its interpretation of the governing statute is the only reasonable construction nor that the Tribunal's interpretation was "irrational or unreasonable" (Matter of General Mills Rest. Group v Chu, 125 AD2d at 763) and, thus, has not shown that the Tribunal's determination that it is ineligible for the manufacturing tax credits should be reversed.

Petitioner likewise failed to establish its entitlement to pollution tax credits available to certain "industrial waste treatment facilities or air pollution control facilities, used in the taxpayer's trade or business" (Tax Law former § 210 [12] [b] [i] [B]).  The statute specifically provides that the credits were available only to facilities that have been certified by the DEC as compliant with applicable state environmental, public health and sanitary statutes, rules and other requirements (see Tax Law former 210 [12] [b] [iii]).  Petitioner concedes that its assets did not have this certification.  Accordingly, it did not meet its burden to prove that it was entitled to the credits (see Matter of Grace v New York State Tax Commn., 37 NY2d at 197; Matter of XO N.Y., Inc. v Commissioner of Taxation & Fin., 51 AD3d 1154, 1154-1155 [2008]).  We decline to accept petitioner's suggestion that its facilities should be excused from the certification requirement on the ground that they satisfy federal licensing procedures and specifications that, according to petitioner, meet or exceed those imposed by the state, as the courts do not "essentially rewrite an unambiguous provision of a statute by ignoring explicit language, no matter how equitable such a result may appear" (Matter of Golub Corp. v New York State Tax Appeals Trib., 116 AD3d 1261, 1263 [2014]).

We further reject petitioner's claim that the DEC certification requirement is unconstitutional as applied to petitioner.[7]  Petitioner first asserts that requiring DEC

---

[7]  Although a CPLR article 78 proceeding may not be used to challenge the constitutional validity of a statute, it is the

certification for petitioner's facilities violates the supremacy clause of the US Constitution because "the federal government has exclusive authority under the doctrine of pre[]emption to regulate the construction and operation of nuclear power plants" (Northern States Power Co. v State of Minnesota, 447 F2d 1143, 1154 [8th Cir 1971], affd 405 US 1035 [1972]; see US Const, art VI, cl 2; Osarczuk v Associated Univs., Inc., 36 AD3d 872, 876 [2007]).  To regulate is "[t]o control (an activity or process) [especially] through the implementation of rules" (Black's Law Dictionary [10th ed 2014], regulate), and making a tax credit available to an eligible taxpayer does not constitute controlling the taxpayer's activities or processes.  Tax Law former § 210 (12) (b) (iii) grants no authority to taxing authorities or the DEC to control petitioner's nuclear power facilities; instead, it merely sets out the criteria for eligibility for pollution tax credits and charges DEC with certifying that these criteria are met.  By logical extension, if the preemption doctrine prevented state governments from establishing eligibility criteria for tax credits for nuclear power plants, it would necessarily also prevent them from allowing tax credits to such facilities at all — an argument that petitioner does not espouse.  Thus, petitioner has not shown that, in charging the Nuclear Regulatory Commission with the duty to regulate the operation and construction of nuclear power plants, it was also "the clear and manifest purpose of Congress" to preempt the allowance of state tax credits to such facilities or the establishment of criteria for such credits (Matter of Standard Mfg. Co. v Tax Commn. of State of N.Y., 114 AD2d 138, 142 [1986], affd 69 NY2d 635 [1986]).

        Next, petitioner contends that the certification requirement violates the equal protection clause by creating a class of taxpayers who are ineligible for pollution tax credits — that is, taxpayers who own and operate nuclear facilities.  However, the record does not reveal that DEC's denial of the requisite certifications was based upon petitioner's status as

appropriate vehicle where, as here, the claim is that the statute is unconstitutional as applied to the challenger (see Matter of Kovarsky v Housing & Dev. Admin. of City of N.Y., 31 NY2d 184, 191-192 [1972]).

the owner and operator of nuclear power plants.  Rather, in substance, the applications were denied on the ground that the assets for which petitioner sought tax credits were not within the categories of equipment eligible to receive DEC certification for such credits under the Tax Law and Environmental Conservation Law.  Notably, petitioner failed to raise a timely direct challenge to DEC's determinations and does not argue on review that DEC misinterpreted the applicable statutes in reaching these conclusions.

To establish its as-applied equal protection claim, petitioner is required to show that "[it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" (Village of Willowbrook v Olech, 528 US 562, 564 [2000]).  Petitioner has neither shown that it met the requirements for certification nor that it was treated differently from similarly situated taxpayers, and it has not "negat[ed] every conceivable basis which might support" the certification requirement (Trump v Chu, 65 NY2d 20, 25 [1985], appeal dismissed 474 US 915 [1985]).  Accordingly, it has not shown that it was denied equal protection of the law (see Amazon.com, LLC v New York State Dept. of Taxation & Fin., 81 AD3d 183, 205-207 [2010], affd sub nom. Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586 [2013], cert denied ___ US ___, 134 S Ct 682 [2013]).

Finally, as petitioner was not eligible for the manufacturing tax credits or the pollution tax credits, the Tribunal properly determined that it was likewise not eligible for employment incentive credits pursuant to Tax Law former § 210 (12-D).

Peters, P.J., Lahtinen and Lynch, JJ., concur.

-10-                    519639

ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

ENTER:

Robert D. Mayberger
Clerk of the Court