Matter of Balbo v New York State Tax Appeals Trib. (2018 NY Slip Op 05540)





Matter of Balbo v New York State Tax Appeals Trib.


2018 NY Slip Op 05540


Decided on July 26, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 26, 2018

524161

[*1]In the Matter of ANGELO BALBO et al., Petitioners,
v
NEW YORK STATE TAX APPEALS TRIBUNAL et al., Respondents.

Calendar Date: June 5, 2018

Before: Garry, P.J., Egan Jr., Aarons, Rumsey and Pritzker, JJ.


Greenwald Law, PC, Chester (David A. Brodsky of counsel), for petitioners.
Barbara D. Underwood, Attorney General, Albany (Brian D. Ginsberg of counsel), for Commissioner of Taxation and Finance, respondent.



MEMORANDUM AND JUDGMENT
Egan Jr., J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal denying petitioners' request for a refund of personal income tax imposed under Tax Law article 22.
Petitioner Angelo Balbo is the sole shareholder of Angelo Balbo Realty Corp. (hereinafter Balbo Realty) and the sole member of Angelo Balbo Management, LLC (hereinafter Balbo Management), a real estate management company, which is certified as a qualified empire zone enterprise (hereinafter QEZE) (see Tax Law § 15 [a]; General Municipal Law art 18-B). In 2006, Balbo Management
acquired an office complex located at 9-11 Raymond Avenue in the City of Poughkeepsie, Dutchess County and, as part thereof, executed a mortgage agreement with IXIS Real Estate Capital Inc. (hereinafter the lender). The following year, Balbo Management sought to refinance the mortgage agreement with the lender who, by that time, had procured Wells Fargo as its servicing agent. As servicing agent, Wells Fargo required various modifications to the original mortgage agreement, which resulted in, among other things, transfer of ownership of the property from Balbo Management to Balbo Realty. The revised loan agreement also specified that the monthly property tax payments were to be remitted to Wells Fargo, which would deposit said funds into an escrow account and thereafter remit payment to the appropriate taxing authority on behalf of Balbo Realty, the property owner. In January 2008, Balbo Realty leased the property to Balbo Management, which, pursuant to the terms of their November 2009 revised lease [*2]agreement, specified, among other things, that Balbo Management was solely responsible for all state, county, city and school taxes. In turn, Balbo Management tendered the requisite tax payments to Wells Fargo, which thereafter paid the applicable real property taxes to the taxing authority (i.e., the receiver of taxes of the City of Poughkeepsie).
In 2011 and 2012, Balbo and his wife, petitioner Elena Balbo, filed joint New York resident income tax returns wherein they claimed QEZE real property tax credits earned by Balbo Management based upon its payment of real property taxes for the property (see Tax Law § 15 [e]). Following an audit, the Department of Taxation and Finance denied the claimed real estate credits and issued a notice of account adjustment reducing the amount of petitioners' claimed refund from $240,126 to $99,465.04 in 2011 and from $241,103 to $86,850.48 in 2012, determining that, although Balbo Management was an eligible QEZE in 2011 and 2012, petitioners were not eligible for the subject tax credit because Balbo Management did not, as a lessee, pay the subject property taxes via a "direct payment" to the taxing authority (see Tax Law § 15 [e] [3]) and, instead, remitted said payments through Wells Fargo, an intermediary, and allowed Wells Fargo to make the relevant tax payments to the taxing authority. Petitioners thereafter filed petitions seeking a refund of personal income taxes for both 2011 and 2012. Following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the Department's initial determination, finding that the plain language of Tax Law § 15 (e) required Balbo Management, as a lessee, to tender the requisite real property tax payments directly to the taxing authority in order to be QEZE credit-eligible. Upon appeal, respondent Tax Appeals Tribunal affirmed the ALJ's determination. Petitioners then commenced this CPLR article 78 proceeding challenging the Tribunal's determination.
There is no dispute that petitioners qualified for QEZE tax credits in 2011 and 2012 based upon Balbo Management's payment of real property taxes, as a lessee, for the subject property (see Tax Law § 15 [a]; [e] [1], [2]). There is similarly no question that Balbo Management made the requisite tax payments into a mortgage related tax escrow account, in good faith, and in conformity with the applicable mortgage agreement with the lender, and that these payments were thereafter timely tendered to the appropriate taxing authority. The question before us, therefore, is whether petitioners should be precluded from obtaining the benefit of the QEZE real property tax credits solely because Balbo Management utilized a mortgage tax escrow account maintained by Wells Fargo for the payment of real property taxes rather than making a "direct payment" to the taxing authority as provided for in Tax Law § 15 (e).
Indeed, pursuant to Tax Law § 15 (e) (3), taxes paid by a QEZE, as a lessee of real property, are eligible for a credit so long as, as relevant here, "the lessee has made direct payment of such taxes to the taxing authority and has received a receipt for such payment of taxes from the taxing authority." The statute, however, does not specifically define what type or types of payments constitute a "direct payment" to the taxing authority (see Tax Law § 15 [e] [3]). We are confronted, therefore, with a question of statutory interpretation, necessitating an analysis of the statutory language and legislative intent, and, as such, neither deference to the Department's nor the Tribunal's interpretation is required (see Matter of Piccolo v New York State Tax Appeals Trib., 108 AD3d 107, 110 [2013]). While tax statutes authorizing tax credits are, generally speaking, to be strictly construed against the taxpayer (see Matter of Constellation Nuclear Power Plants LLC v Tax Appeals Trib. of the State of N.Y., 131 AD3d 185, 190 [2015], appeal dismissed and leave denied 26 NY3d 996 [2015]), the interpretation of same should not be so narrow and literal as to defeat the statute's intended purpose (see Matter of Gordon v Town of Esopus, 15 NY3d 84, 90 [2010]; Matter of American Food & Vending Corp. v New York State Tax Appeals Trib., 144 AD3d 1227, 1229 [2016]).
Here, although Tax Law § 15 (e) (3) contemplates a "direct payment" of real property taxes from the lessee to the taxing authority, we find that, under the particular circumstances presented here, Balbo Management's use of a mortgage tax escrow account for the payment of real property taxes did not preclude petitioners from claiming the subject QEZE real property tax credits. Contrary to the assertion by respondent Commissioner of Taxation and Finance, once Balbo Management deposited funds into the mortgage tax escrow account for the express purpose of paying the applicable real estate taxes, neither Balbo Management nor Balbo Realty had any further control over these funds, and Wells Fargo, as servicing agent, did not maintain any discretion as to how these funds were to be utilized — they were specifically earmarked for the payment of the real estate taxes for the subject property pursuant to the applicable lender agreement. Further, unlike in Matter of Golub Corp. v New York State Tax Appeals Trib. (116 AD3d 1261, 1262-1263 [2014]), here, the relevant entities, Balbo Management, the lessee of the property, and Balbo Realty, the owner of the property, are both exclusively controlled by a single member or shareholder, Angelo Balbo, and it is Angelo Balbo and Elena Balbo who are claiming the benefit of the relevant pass-through real property tax credits. Under analogous circumstances, we note that the Legislature has approved certain "special legislation" allowing similar lessees of real property to obtain QEZE real property tax credits when certain payments in lieu of taxes were not made in specific conformity with the applicable Tax Law provisions — essentially deeming said payments to constitute a qualifying payment for purposes of obtaining the QEZE tax credit (see L 2016, ch 404). Moreover, neither the Commissioner of Taxation and Finance nor the relevant legislative history provide any cogent policy argument to support why utilizing a mortgage tax escrow account in such a manner should have a preclusive effect on petitioners' ability to claim the QEZE tax credit, to which they are otherwise unquestionably entitled. Accordingly, in our view, under the particular circumstances of this case, the manner in which Balbo Management made the subject tax payments should be deemed to be the functional equivalent of a direct payment to the taxing authority (see Tax Law § 15 [e] [3]) and, therefore, we find that petitioners have sufficiently demonstrated their entitlement to the claimed QEZE real property tax credits (compare Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]; Matter of Golub Corp. v New York State Tax Appeals Trib., 116 AD3d at 1262).
Garry, P.J., Aarons, Rumsey and Pritzker, JJ., concur.
ADJUDGED that the determination is annulled, without costs, petition granted, and matter remitted to respondents for further proceedings not inconsistent with this Court's decision.