Matter of Purcell v New York State Tax Appeals Trib. (2018 NY Slip Op 08388)





Matter of Purcell v New York State Tax Appeals Trib.


2018 NY Slip Op 08388


Decided on December 6, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 6, 2018

524632

[*1]In the Matter of MARK S. PURCELL et al., Petitioners,
v
NEW YORK STATE TAX APPEALS TRIBUNAL et al., Respondents.

Calendar Date: October 11, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Mulvey and Rumsey, JJ.


Bousquet Holstein PLLC, Syracuse (Cecelia R.S. Cannon of counsel), for petitioners.
Barbara D. Underwood, Attorney General, Albany (Owen Demuth of counsel), for respondents.
Hodgson Russ LLP, Buffalo (Christopher L. Doyle of counsel), for New York State Society of Certified Public Accountants, amicus curiae.



MEMORANDUM AND JUDGMENT
Rumsey, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a notice of deficiency of personal income tax imposed under Tax Law article 22.
This proceeding concerns petitioners' entitlement to qualified empire zone enterprise (hereinafter QEZE) tax reduction credits that they claimed for tax years 2008, 2009 and 2010 as pass-throughs from Purcell Construction Corporation (hereinafter PCC), a New York corporation. PCC constructs commercial buildings, primarily in New York and Virginia, utilizing prefabricated systems that it manufactures within the City of Watertown Empire Zone, and it was certified as a QEZE pursuant to General Municipal Law article 18-B on December 2, 2003. PCC is an S corporation, which is a "flow-through" or "pass-through" entity for purposes of taxation. As such, its income and any applicable QEZE tax reduction credits pass through to its sole shareholder, petitioner Mark S. Purcell — a New York resident — and are reported on the personal income tax returns that Purcell files jointly with his wife, petitioner Maria F. Purcell.
During each of the relevant tax years, petitioners claimed QEZE tax reduction credits on their personal income tax returns. The amount of a QEZE tax reduction credit is the product of four factors: the benefit period factor, the employment increase factor, the zone allocation factor and the tax factor (see Tax Law § 16 [b]-[f]). The first three factors are decimal numbers with values between 0.0 and 1.0, and the tax factor is a dollar amount based upon the tax imposed by New York law on the taxpayer that is attributable to the QEZE's income. For a shareholder of a New York S corporation that is a QEZE, the tax factor is the portion of the shareholder's total New York income tax equal to "the ratio of the shareholder's income from the [*2]S corporation allocated within the state, entering into New York adjusted gross income, to the shareholder's New York adjusted gross income" (Tax Law § 16 [f] [2] [C] [emphasis added]).
During the years at issue, PCC derived a significant portion of its gross revenues from construction projects in Virginia. Petitioners calculated the QEZE tax reduction credits that they claimed during tax years 2008-2010 — totaling over $4 million — based on all of PCC's taxable income, including income derived from PCC's operations in Virginia. Petitioners also submitted claims for tax reduction credits equal to the amount of income tax that they paid to Virginia for income earned in that state. This combination of tax credits claimed by petitioners eliminated all of their potential New York income tax liability for 2008-2010, even on their non-QEZE income. However, upon review of petitioners' personal income tax returns for 2008-2010, the Division of Taxation determined that petitioners had miscalculated the QEZE tax reduction credits by failing to exclude the state income taxes that were attributable to PCC's out-of-state income when calculating the tax factor, because such income was not "allocated within the state" as required by Tax Law § 16 (f) (2) (C). To determine the portion of PCC's income that was allocated within the state, the Division of Taxation utilized PCC's business allocation percentage (herein BAP) — the percentage that the gross revenues it realized in New York were of its total gross revenues — for each of the relevant tax years (see Tax Law former § 210 [3]). PCC had reported BAPs of 44.5624%, 51.5741% and 34.3787% for tax years 2008, 2009 and 2010, respectively. Based on its calculations, the Division assessed a total deficiency for the years at issue of $2,903,172.28.
Petitioners challenged that determination, arguing, as relevant here, that the Division erred by using PCC's BAP to determine the amount of PCC's income that was allocated within the state when it calculated petitioners' tax factor [FN1]. The Administrative Law Judge agreed with petitioners and the Division filed an exception. Respondent Tax Appeals Tribunal granted the exception and held that the Division had properly determined the tax factor. Petitioners commenced this CPLR article 78 proceeding in this Court to annul the Tribunal's determination.
The disagreement here is whether the phrase "allocated within the state" requires that the income taxes attributable to a New York S corporation's out-of-state income be excluded when calculating a resident shareholder's QEZE tax reduction credit. The definition of this phrase presents a question of pure statutory interpretation, requiring that we consider the statutory language and legislative history without deference to the Tribunal's interpretation (see Matter of Piccolo v New York State Tax Appeals Trib., 108 AD3d 107, 110 [2013]). However, a tax credit is a form of exemption from taxation (see Matter of Constellation Nuclear Power Plants LLC v Tax Appeals Trib. of the State of N.Y., 131 AD3d 185, 189 [2015], appeal dismissed and lv denied 26 NY3d 996 [2015]). "Statutes creating exemptions must be strictly construed against the taxpayer and, if ambiguity arises, against the exemption, although such statutes should not be interpreted so narrowly as to defeat their settled purposes. A taxpayer seeking an exemption from taxation bears the burden of proving an unambiguous entitlement thereto, showing that the proffered interpretation of the statute is not only plausible, but also that it is the only reasonable construction" (Matter of Piccolo v New York State Tax Appeals Trib., 108 AD3d at 111-112 [internal quotation marks and citations omitted]). Contrary to petitioners' contention, this burden applies when the question is one of pure statutory interpretation of a tax exemption statute (see Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 581-582 [2006]; Matter of Piccolo v New York State Tax Appeals Trib., 108 AD3d at 110-112). When engaging in statutory interpretation, "all provisions of a statute must be read and construed together, and words within a provision are not to be rejected as superfluous when they may instead be given a distinct and separate meaning" (Matter of Astoria Fin. Corp. v Tax Appeals Trib. of State of N.Y., 63 AD3d 1316, 1319 [2009], citing McKinney's Cons Laws of NY, Book [*3]1, Statutes §§ 97, 231; see Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104 [2001]; see also McKinney's Cons Laws of NY, Book 1, Statutes § 98).
The tax factor for a shareholder of a New York S corporation that is a QEZE is the portion of his or her New York income tax that is attributable to the income of the S corporation (see Tax Law § 16 [f] [2] [C]). "Such attribution shall be made in accordance with the ratio of the shareholder's income from the S corporation allocated within the state, entering into New York adjusted gross income, to the shareholder's New York adjusted gross income, or in accordance with such other methods as [respondent Commissioner of Taxation and Finance] may prescribe as providing an apportionment which reasonably reflects the portion of the shareholder's tax attributable to the income of the qualified empire zone enterprise. In no event may the ratio so determined exceed 1.0" (Tax Law § 16 [f] [2] [C] [emphasis added]). Petitioners argue that, based on their interpretation of the statute, all income that a resident shareholder derives from a New York S corporation is allocated within the state and that, by contrast, only the portion of a nonresident's income from a New York S corporation that is attributable to the corporation's New York source income is allocated within the state. This interpretation is facially implausible and unreasonable because it would impermissibly render the disputed provision — allocated within the state — superfluous or meaningless and, further, would result in disparate treatment of resident and nonresident shareholders.
Petitioners correctly note that all income that a resident shareholder derives from a New York S corporation is entirely included within his or her New York adjusted gross income (see Tax Law § 612), and that only the portion of a New York S corporation's income that is attributable to New York sources is included in a nonresident's New York adjusted gross income (see Tax Law § 632). The disputed phrase — allocated within the state — is not required to reach the result advocated by petitioners. If the disputed clause were stricken from the statute, it would provide that "[s]uch attribution shall be made in accordance with the ratio of the shareholder's income from the S corporation . . . entering into New York adjusted gross income, to the shareholder's New York adjusted gross income" (Tax Law § 16 [f] [2] [C] [omitting "allocated within the state,"]). Pursuant to such language, as conceded by petitioners, all of a resident shareholder's income from a New York S corporation would be included in the New York adjusted gross income reported on his or her return, but only the income that is attributable to a New York S corporation's New York earnings would be included in a nonresident shareholder's New York adjusted gross income. Further, under petitioners' argument, resident and nonresident shareholders of a New York S corporation that conducts business in both New York and one or more additional states would receive QEZE credits of different amounts [FN2]. Thus, petitioners failed to meet their burden of proving their unambiguous entitlement to the claimed exemption.
We further note that, by contrast, the interpretation proffered by the Commissioner gives meaning to the disputed phrase and ensures that eligibility for QEZE tax reduction credits for shareholders of New York S corporations is based on only the income that is earned by such corporations within New York. As previously noted, if the statute did not contain the phrase "allocated within the state," the QEZE tax reduction credits available to nonresident shareholders would be based on only the New York source income of the corporation, while the QEZE tax reduction credits available to resident shareholders of a New York S corporation would be based on all income of the corporation, wherever earned. Allocation of a New York S corporation's income within the state to a nonresident shareholder's New York adjusted gross [*4]income is determined by application of the BAP reported by the corporation. When calculating QEZE credits, it is rational to interpret Tax Law § 16 (f) to require similar allocation of a New York S corporation's income for resident shareholders based on the BAP reported by the corporation. Thus, the interpretation proffered by the Commissioner ensures similar treatment of the resident and nonresident shareholders of S corporations by application of the BAP, which calculates the tax factor and resulting QEZE tax reduction credits based on corporate income earned only in New York. Moreover, this construction ensures that QEZE tax credits are based on economic activity that occurs only within qualified empire zones [FN3]. We have considered petitioners' remaining arguments and conclude that they lack merit.
McCarthy, J.P., Egan Jr., Lynch and Mulvey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Petitioners and the Division initially disputed calculation of the zone allocation factor; however, they subsequently agreed that PCC was entitled to the maximum value of 1.0 for each of the first three factors for all relevant tax years. Thus, calculation of the tax factor was the only issue that was presented to respondent Tax Appeals Tribunal and is now raised in this proceeding.

Footnote 2: For example, if PCC had had both resident and nonresident shareholders for the years at issue, petitioners' interpretation of the statute would have resulted in the nonresident shareholders receiving QEZE credits based only on PCC's New York source income, as determined by application of the BAP reported by PCC, while the resident shareholders would have received QEZE credits based on all of PCC's income, wherever earned. As a result, in tax years 2008, 2009 and 2010, a nonresident shareholder would have received QEZE credits of only 44.5624%, 51.5741% and 34.3787%, respectively, of those received by a resident shareholder who owned an equal number of shares.

Footnote 3: QEZE tax reduction credits are not available based on all business activity conducted by a QEZE in New York. Rather, the zone allocation factor restricts the availability of such credits to activity that occurs only within an empire zone, as measured by capital investment and employment expense (see Tax Law § 16 [e] [1], [2]). It would be irrational to conclude that the statute — which expressly limits QEZE tax reduction credits to New York activity that occurs within empire zones — permits such credits to be based on income realized from out-of-state operations.